## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sanimax USA, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>City of South St. Paul,<br><br>                    Defendant. | Case No. 20-cv-01210 (SRN/ECW)<br><br><br>**ORDER** |

Aaron R. Wegrzyn, Foley & Lardner LLP, 777 East Wisconsin Avenue, Milwaukee, WI 53202; Andrew Casimir Gresik, Foley & Lardner LLP, 150 East Gilman Street, Suite 5000, Madison, WI 53703; Stephan J. Nickels, Foley & Lardner LLP, PO Box 1497, Madison, WI 53701; and Henry M. Helgen, III and Leland Patrick Abide, Kutak Rock LLP, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for Plaintiff.

John M. Baker and Katherine M. Swenson, Greene Espel PLLP, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 10] filed by Defendant City of South St. Paul. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS in part** and **DENIES in part** the motion.

## I.    BACKGROUND

Plaintiff Sanimax USA, LLC has operated an animal rendering and used cooking oil processing facility in the City of South St. Paul ("the City") for over fifty years. (Compl. [Doc. No. 1] ¶¶ 1, 19-20.) The area around Sanimax's facility has historically been

dominated by stockyards and meatpacking plants. (*Id.* ¶¶ 20-21.) Although some of these businesses have left the area, cattle hide processing and tanning companies, a beef processing plant, a recycling center, a pet crematorium, and South St. Paul's compost site remain. (*Id.* ¶ 21.) Sanimax's rendering operations (as well as the operations of these other nearby businesses) produce odors, which Sanimax has endeavored to minimize by investing in odor mitigation technology at its facility. (*Id.* ¶¶ 6-7, 21-22, 24.)

Beginning in 2014, Sanimax alleges that the City "targeted" Sanimax by passing new ordinances directed at them. (*Id.* ¶¶ 7, 23-30.) The City first passed a nuisance ordinance designating Sanimax a "significant odor generator," and it is alleged that the nuisance ordinance imposed "draconian" restrictions on Sanimax and "threatened" Sanimax with "severe financial penalties." (*Id.* ¶¶ 7, 23.) In 2017, Sanimax sued to prevent enforcement of the 2014 ordinance, and, it is alleged, the City responded by amending it. (*Id.* ¶¶ 7, 26.) Later in 2017, the City proposed a zoning ordinance that would have created a "light industrial district" covering Sanimax's facility and would have declared as prohibited uses "processing of grease or organics into by-products" and "rendering, reclaiming or processing of animals or meat by-products"—activities that constitute Sanimax's core business. (*Id.* ¶¶ 8, 27.) Sanimax again challenged the proposed ordinance, and the City ultimately withdrew it. (*Id.* ¶¶ 8, 28.)

In 2019, the City passed another zoning ordinance (the "Zoning Amendment") nearly identical to the 2017 ordinance. (*Id.* ¶¶ 9, 31.) The Zoning Amendment designated Sanimax's property—as well as numerous neighboring parcels—as a "light industrial district." (*Id.*; Compl., Ex. A.) Like the 2017 proposal, the Zoning Amendment lists

2

"processing of grease or organics into by-products" and "rendering, reclaiming or processing of animals or meat by-products" as prohibited uses. (Compl. ¶ 34.) But it does not prohibit such "heavy industrial" uses as oil refineries, coal mining, or metallurgy. (*Id.* ¶ 34.) The Zoning Amendment is geographically narrower than the 2017 proposal, and does not include "similar businesses in the immediate vicinity," such as Long Cheng Hmong Livestock (a slaughterhouse) and Twin City Hides (a tannery). (*Id.* ¶¶ 31, 54.) Consequently, Sanimax alleges that it is "the only business in the 'light industrial zone' that faces serious negative impacts from the Zoning Amendment." (*Id.* ¶ 31.)

Sanimax alleges that the City's decision to enact the Zoning Amendment was motivated by discriminatory animus toward Sanimax. Sanimax points to an agenda report regarding the Zoning Amendment, in which the City allegedly indicated its intent to "'transition' away from business operations like that of Sanimax." (*Id.* ¶ 32.) It is alleged that the City referred to Sanimax as a "remnant propert[y]" that is "not consistent with the spirit, intent and policies" of the City's zoning plans. (*Id.*) Moreover, Sanimax alleges that a zoning administrator stated, at a meeting of South St. Paul's Planning Commission, "Don't you think that if we had any legal means to [shut down Sanimax], we would?" (*Id.* ¶ 33.) Similarly, Sanimax alleges that a City representative stated that the objective of the Zoning Amendment was to "'sunset' Sanimax as a business in South St. Paul." (*Id.* ¶ 11.) Sanimax also alleges that in late 2019, Sanimax representatives toured a City property to consider subletting a portion of the property for use as a truck repair shop. (*Id.* ¶ 30.) The real estate agent retained by the City allegedly told Sanimax's representatives that he had

been given "specific instructions from South St. Paul officials to not sell the facility to Sanimax." (*Id.*)

Prior to the Zoning Amendment, Sanimax's use of its property had been governed by conditional use permits. (*Id.* ¶ 35.) As a result of the Zoning Amendment, Sanimax's status is now that of a legal, non-conforming use. (*Id.* ¶¶ 35-36.) At the time the Zoning Amendment was passed, section 118-64 of South St. Paul's zoning code provided that

> [n]o repairs or alterations may be made to a nonconforming building or structure . . . except those needed to maintain the structural soundness of such building or structure . . . except by consent of the city council. A nonconforming building shall not be added to or enlarged in any manner unless such additions and enlargements are made to conform to all the requirements of the zoning use district in which such building or structure is located . . . .

(*Id.* ¶ 37; First Decl. Sharon Frisell [Doc. No. 13], Ex. 4.) Sanimax alleges that the restrictions section 118-64 places on its now-non-conforming property "dramatically decrease[] the economic value of the property and negate[] over 50 years of investment by Sanimax in its facility and South St. Paul." (Compl. ¶ 39.) Moreover, Sanimax alleges that the restrictions would prevent it from complying with a settlement agreement it reached with plaintiffs in an unrelated lawsuit. (*Id.*)

Sanimax filed this lawsuit against the City, alleging: 1) that the City enacted the Zoning Amendment in retaliation for Sanimax's 2017 lawsuit, in violation of the First and Fourteenth Amendments; 2) that the Zoning Amendment treats Sanimax as a "class of one," in violation of the Equal Protection Clause of the Fourteenth Amendment; 3) that the Zoning Amendment is preempted by Minnesota law; and 4) that the Zoning Amendment

constitutes a regulatory taking under the United States and Minnesota Constitutions. The City now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.    DISCUSSION

### A.    Standard of Review

#### 1.    Rule 12(b)(1)

Where the defendant argues that the facts alleged in the complaint fail to establish subject-matter jurisdiction—as the City does here, with respect to Counts III, IV, and V— the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). The Court's review is limited to the face of the pleadings. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).

#### 2.    Rule 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain

"detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

The Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

Here, the City submitted numerous documents alongside its motion, including documents related to the City's 2030 Comprehensive Plan, transcripts recording statements made by City officials at several public meetings, and other public records. (*See* First Decl. Sharon Frisell.) Although the Court may consider transcripts of public hearings as "matters of public record," the Court may merely take notice of the existence of the transcript and hearing; the Court may not evaluate testimonial statements recorded in the transcript that contradict the pleadings. *See Charter Advanced Servs. (MN), LLC v. Heydinger*, No. 15-3935 (SRN/KMM), 2016 WL 3661136, at *18 (D. Minn. July 5, 2016) ("[A] motion to dismiss is not the proper procedural juncture for consideration of a defendant's evidence,

6

including any of a defendant's testimony at an antecedent administrative proceeding. . . . While a court may take judicial notice of another court's opinion, such notice is of 'the existence of the opinion, which is not subject to reasonable dispute over its authenticity,' but not of the facts summarized in the opinion." (quoting *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014))); *Shiraz Hookah, LLC v. City of Minneapolis*, No. 11-CV-2044 (PJS/JJK), 2011 WL 6950483, at *2 (D. Minn. Dec. 30, 2011) (declining to consider transcripts of a city council hearing regarding an ordinance on a motion to dismiss). Accordingly, the Court will consider the public records submitted by the City, but will not consider materials, such as the hearing transcripts, offered to contest the well-pled allegations of the Complaint.

### B.     First and Fourteenth Amendment Retaliation Claim

Sanimax alleges that the City enacted the Zoning Amendment in retaliation for Sanimax's 2017 lawsuit challenging the City's nuisance ordinance and for Sanimax's opposition to the City's previous rezoning efforts. "It is well established that the right to file a legal action is protected under the First Amendment." *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013) (citing *Goff v. Burton*, 7 F.3d 734, 736 (8th Cir. 1993)). In order to survive a motion to dismiss, a plaintiff claiming retaliation in response to the exercise of First Amendment rights must plausibly allege "(1) that it engaged in a protected activity, (2) that the defendants responded with adverse action that would 'chill a person of ordinary firmness' from continuing in the activity, and (3) that 'the adverse action was motivated at least in part by the exercise of the protected activity.'" *L.L. Nelson*

*Enterprises, Inc. v. Cty. of St. Louis*, 673 F.3d 799, 807–08 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

For purposes of its Motion to Dismiss, the City does not contest that Sanimax's 2017 lawsuit constitutes protected activity. (Def.'s Mem. Supp. Mot. Dismiss [Doc. No. 12], at 35 n.21.) The City also does not appear to dispute that enacting the Zoning Amendment may qualify as an adverse action that would "chill a person of ordinary firmness" from engaging in protected activity. *L.L. Nelson Enterprises, Inc.*, 673 F.3d at 807–08. Rather, the City argues that Sanimax has not adequately pleaded the requisite causal connection between Sanimax's previous lawsuit and the City's decision to enact the Zoning Amendment. In addition, the City asserts that Sanimax must also plead that the City lacked probable cause to enact the Zoning Amendment, but has not made such an allegation.

Sanimax has plausibly alleged the required causal connection between its protected activity and the City's decision to enact the Zoning Amendment. At the pleading stage, Sanimax need only allege that the City's "adverse action was motivated *at least in part* by" Sanimax's protected activity. *Id.* at 808 (emphasis added). Sanimax's Complaint contains ample allegations of retaliatory motive. Sanimax quotes public statements from City officials (albeit unnamed) expressing a desire to drive Sanimax from the City. (Compl. ¶¶ 11, 33, 47.) In addition, Sanimax specifically alleges that when Sanimax was considering leasing a portion of a city-owned property to use as a truck repair shop, a real estate agent retained by the City to market the property "told Sanimax representatives that he was given specific instructions from South St. Paul officials not to sell the facility to

Sanimax." (*Id.* ¶ 30.) Moreover, Sanimax notes that the language of the Zoning Amendment proscribes "processing of grease or organics into by-products" and "rendering, reclaiming or processing of animals or meat by-products"—Sanimax's core business—while not prohibiting other traditionally "heavy industrial" uses. (*Id.* ¶ 34.) Sanimax argues that the City's language is tailored to Sanimax's business, and is inconsistent with the City's purported effort to broadly transition the zone toward "light industrial" uses. Finally, Sanimax alleges that similar businesses that had been included in the 2017 proposed zoning ordinance were not affected by the Zoning Amendment. (*Id.* ¶ 48.) The Court finds that these allegations, taken as true and viewed in the light most favorable to Sanimax, plausibly state a causal connection between Sanimax's protected activity and the City's decision to enact the Zoning Amendment.

The City's arguments to the contrary stray beyond the bounds of Rule 12(b)(6) review. Relying on documents submitted alongside its motion, the City asserts that the Zoning Amendment was in the works well before Sanimax's 2017 lawsuit, that the businesses allegedly "similar" to Sanimax are in fact very dissimilar, and that, therefore, Sanimax's allegations of retaliatory motive are simply implausible. The materials the City cites include documents related to the City's 2030 Comprehensive Plan, transcripts recording statements made by City officials at City Council and Planning Commission meetings, and other public records. (*See* First Decl. Sharon Frisell.)

It is true that the Court may consider public records such as those submitted by the City on a motion to dismiss. *See Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (stating that a court may, on a motion to dismiss, consider "matters of public record"). But

the Court cannot weigh statements within those records as evidence of the City's lack of a retaliatory motive. *See Charter Advanced Servs. (MN), LLC v. Heydinger*, No. 15-3935 (SRN/KMM), 2016 WL 3661136, at *18 (D. Minn. July 5, 2016) ("[A] motion to dismiss is not the proper procedural juncture for consideration of a defendant's evidence, including any of a defendant's testimony at an antecedent administrative proceeding."); *Shiraz Hookah, LLC v. City of Minneapolis*, No. 11-CV-2044 (PJS/JJK), 2011 WL 6950483, at *2 (D. Minn. Dec. 30, 2011) (declining to consider transcripts of a city council hearing discussing an ordinance on a motion to dismiss). Insofar as the materials attached to the City's declaration contest the allegations contained in the Complaint, those materials are properly considered at summary judgment—not on a motion to dismiss under Rule 12(b)(6).

Finally, the City argues that Sanimax's retaliation claim requires Sanimax to plead and ultimately prove that the City lacked probable cause to enact the Zoning Amendment. The Eighth Circuit has imposed such a requirement where the plaintiff alleges retaliatory law enforcement action, especially where one government actor harbors animus toward the plaintiff and directs another, unbiased officer to conduct the retaliatory enforcement action. *See generally Scott v. Tempelmeyer*, 867 F.3d 1067, 1070–72 (8th Cir. 2017) (reviewing Supreme Court and Eighth Circuit precedent requiring a plaintiff to show lack-of-probable cause in order to prove First Amendment retaliation). The City argues that the reasoning behind the heightened pleading standard required by such cases applies here. Specifically, the City argues that there is a gap between the unnamed, biased individuals quoted in the Complaint and the City's decisionmakers who approved the Zoning Amendment; that there

10

is a presumption of regularity regarding zoning legislation; and that the City Council, if sued individually, would be immune for the enactment of the legislation. (Def.'s Mem. Supp. 40-41.)

The Court is not persuaded by this argument. First, the City has not identified any authority extending the probable cause pleading requirement beyond the law enforcement context and into the law-making context. As the City points out with respect to Sanimax's takings claims, there has been no enforcement action against Sanimax. Moreover, there is no gap between the government actors who allegedly possessed animus toward Sanimax and the government actors who took retaliatory action. Rather, Sanimax alleges that the City Council possessed a retaliatory motive, and that the City Council was influenced by that motive in enacting the Zoning Amendment. Thus, Sanimax is not required to plead the absence of probable cause.

In sum, Sanimax has plausibly alleged a First and Fourteenth Amendment retaliation claim. The City's arguments to the contrary primarily target the causal connection between Sanimax's protected activity and the City's allegedly retaliatory action. But causation is a fact-intensive issue, and the City's arguments rely principally on materials which cannot be considered, at this stage, to dispute the well-pled allegations of Sanimax's Complaint. Therefore, the Court denies the City's Motion to Dismiss as to Count I.

### C.    Fourteenth Amendment Equal Protection Claim

Sanimax alleges that the Zoning Amendment arbitrarily treats Sanimax as a "class of one," in violation of the Equal Protection Clause. "A class-of-one claim is stated when

a plaintiff alleges that a defendant intentionally treated [it] differently from others who are similarly situated and that no rational basis existed for the difference in treatment." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (citations omitted). The plaintiff must allege comparators who are "in all relevant respects similarly situated." *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) (quoting *Bills v. Dahm*, 32 F.3d 333, 335 (8th Cir. 1994)).

Here, Sanimax points to two substantially similar businesses: Long Cheng Hmong Livestock (a slaughterhouse) and Twin City Hides (a tannery). (Compl. ¶¶ 31, 54.) Sanimax alleges that both businesses are "in the immediate vicinity of Sanimax," and were included in the City's 2017 proposed zoning ordinance but were excluded from the Zoning Amendment. (*Id.*) Both businesses would likely be affected by the Zoning Amendment, which lists "processing of grease or organics into by-products" and "rendering, reclaiming or processing of animals or meat by-products" as prohibited uses. (*Id.* ¶ 34.) Nonetheless, Sanimax alleges that Long Cheng and Twin City Hides were excluded from the Zoning Amendment's "light industrial district" and are allowed "to continue their operations and even expand." (*Id.* ¶ 54.) Moreover, Sanimax alleges that the difference in treatment was intentional, and motivated by the City's intent to "single out Sanimax and treat it differently from similarly situated businesses." (*Id.* ¶ 57.)

In response, the City, again relying on extrinsic materials submitted alongside its motion, asks the Court to find as a matter of law that Long Cheng and Twin City Hides are not substantially similar "in all relevant respects" to Sanimax. *Flowers*, 558 F.3d at 798. First, the City points to a map of the area, which indicates that both Long Cheng and Twin

City Hides are approximately one mile away from Sanimax, and therefore not "in the immediate vicinity" of Sanimax. (Def.'s Mem. Supp. 25-26.) Second, the City notes that Long Cheng's premises are zoned for mixed use and Long Cheng is a non-conforming use, and argues that the City therefore treated Sanimax more like Long Cheng by rendering it a non-conforming use in the light industrial district. (*Id.* at 27.) Although the Court may consider the public records submitted by the City, the City may not rely on them to contest the merits of Sanimax's allegations at this stage. The Court cannot say, as a matter of law and at the pleading stage, that the apparent one-mile distance between Sanimax and its comparators defeats Sanimax's allegation of substantial similarity. Nor can the Court say that the differences in zoning between Sanimax and Long Cheng, as a matter of law, render Long Cheng not substantially similar in all *relevant* respects. Therefore, Sanimax has carried its burden, at this stage, to plausibly allege that the City intentionally treated it differently than substantially similar businesses.

Sanimax has also plausibly alleged that the difference in treatment is not supported by any rational basis. According to the Complaint, the only justification for the City's dissimilar treatment of Sanimax is that City officials desired to eliminate Sanimax's facility. (Compl. ¶¶ 54-58.) The City argues that there are conceivable, rational explanations of the City's decision to zone Sanimax in the light industrial district. The City points out that the light industrial district is consistent with the City's 2030 Comprehensive Plan, and argues that the City is entitled to achieve that plan piecemeal by rezoning Sanimax's premises but not those of Long Cheng or Twin City Hides. In addition, the City argues that it was rational for the City Council to rezone the 115 parcels within the district

13

but not include Long Cheng, which was not in the original industrial district altered by the Zoning Amendment, or Twin City Hides, which sits across a freeway from the light industrial district.

The Court acknowledges that longstanding precedent generally permits legislative bodies to take incremental steps without running afoul of the Equal Protection Clause. *See, e.g.*, *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 488–89 (1955). But the Court cannot evaluate, at this stage, whether the 2030 Comprehensive Plan furnishes a rational basis for the City's decision to include Sanimax in the light industrial district but exclude Long Cheng and Twin City Hides, especially since all three businesses were included in the 2017 zoning proposal. Nor can the Court determine whether the facts that Long Cheng sits in a mixed-use district and that Twin City Hides sits across a freeway establish a rational basis for the City's decision. To be sure, Sanimax will have to confront these proffered explanations at summary judgment, on a full record. But the Court cannot say, based merely on the Complaint and those public records submitted by the City which are reviewable on a Rule 12 motion, that a *rational* basis—apart from the City's animus toward Sanimax—existed for the City's decision.

Accordingly, the Court finds that Sanimax has plausibly alleged that the City intentionally treated Sanimax differently than other similarly situated businesses and that no rational basis exists for the difference in treatment. Therefore, the Court denies the City's Motion to Dismiss as to Count II.

### D.    Statutory Preemption Claim

Sanimax seeks a declaratory judgment that the Zoning Amendment is preempted by Minnesota law. At the time Sanimax filed this lawsuit, section 118-64 of South St. Paul's zoning code provided:

> **No repairs or alterations may be made to a nonconforming building or structure . . . except those needed to maintain the structural soundness** of such building or structure . . . except by consent of the city council.

(First Decl. Sharon Frisell, Ex. 4 (emphasis added).) By contrast, Minnesota Statutes § 463.357 provides:

> Except as otherwise provided by law, any nonconformity, including the lawful use or occupation of land or premises existing at the time of the adoption of an additional control under this chapter, may be continued, **including through repair, replacement, restoration, maintenance, or improvement, but not including expansion** . . . .

Minn. Stat. § 462.357, Subd. 1e(a) (emphasis added). Thus, section 118-64 purported to prohibit repairs or alterations to a non-conforming building that were not necessary to maintain the building's structural integrity, unless the City Council consented. The statute, however, permits "repair, replacement, restoration, maintenance, or improvement" of a non-conforming building, without regard to the repair's relationship to the building's integrity.

After the parties filed their memoranda, the City amended section 118-64. Under the amended ordinance, "[e]xcept as otherwise provided elsewhere in this Code or under Minnesota Statute, any nonconformity . . . may be continued including through repair, replacement, restoration, maintenance, or improvement, but not including expansion." (Second Decl. Sharon Frisell [Doc. No. 22], Ex. 20.) The City also added section 118-65, which provides:

> A nonconforming building or structure shall not be added to, enlarged, or expanded in any manner unless such additions and enlargements are made to conform with all the requirements of the zoning district in which such building or structure is located.

(*Id.*)

The Court finds that it does not have jurisdiction to consider Sanimax's statutory preemption claim. Under the Declaratory Judgment Act, a federal court may, "[i]n a case of actual controversy within its jurisdiction, . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The phrase 'case of actual controversy' . . . 'refers to the type of "Cases" and "Controversies" that are justiciable under Article III.'" *Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081 (8th Cir. 2012) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)). That is, "[t]here must be a concrete dispute between parties having adverse legal interests, and the declaratory judgment plaintiff must seek 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)).

Here, the Court finds that there is no actual controversy regarding the interpretation of section 118-64. As initially written, the ordinance prohibited repairs or alterations that were not required to maintain a non-conforming building's structural integrity, whereas Minnesota law generally permits the owner of a non-conforming building to make repairs and alterations without regard to their connection to the building's soundness. Even as the

ordinance was initially written, the City did not dispute that Sanimax could "repair or alter its use or structure notwithstanding the City's rezoning." (Def.'s Mem. Supp. 20.) Given the City's admission and subsequent amendment to the statute to bring it in conformity with Minnesota Statutes § 463.357, there is no actual controversy between the parties on this issue.

At oral argument, Sanimax expressed its concern that section 118-65 remains in conflict with § 463.357, insofar as section 118-65 provides that a non-conforming structure may not be "added to." Sanimax argues that section 118-65's prohibition of "expanding" or "enlarging" a non-conforming structure is consistent with the statute, but the prohibition of "adding to" a structure must mean something different. As an example, Sanimax argued that section 118-65 may prohibit it from adding a new "scrubber" to the building to help minimize noxious emissions. But such an improvement may well be explicitly authorized as an "improvement" under section 118-64, and the City does not appear to contest that Sanimax could make such an addition. Therefore, the Court does not find that an actual controversy exists at this stage, and grants the City's Motion to Dismiss as to Count III.

### E.    Takings Claims

Finally, Sanimax alleges that the Zoning Amendment constitutes a regulatory taking under the United States and Minnesota Constitutions. Sanimax's takings claims, however, are unripe. At the outset, the Court notes that Sanimax does not argue that the Zoning Amendment constitutes a facial taking; rather, Sanimax asserts that the Zoning Amendment, as applied to its property, effects a regulatory taking. (Plf.'s Mem. Opp. Mot. Dismiss [Doc. No. 20], at 25 n.11.)

The Supreme Court has held that an as-applied "takings claim challenging the application of land-use regulations is not ripe unless 'the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019)). A landowner cannot bring a regulatory takings claim without "first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law." *Id.* at 620–21. The final decision requirement "responds to the high degree of discretion characteristically possessed by land-use boards in softening the strictures of the general regulations they administer." *Id.* at 620 (quoting *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 738 (1997)). Although the final decision requirement obligates a plaintiff to "give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty, a takings claim is likely to have ripened." *Id.*

Courts analyzing regulatory takings claims under the Minnesota Constitution similarly hold that a landowner's takings claim is unripe until the landowner receives a final decision regarding how the land regulation applies to the landowner's property. *See, e.g.*, *Thompson v. City of Red Wing*, 455 N.W.2d 512, 515–16 (Minn. Ct. App. 1990) ("Where a land owner has not yet obtained a final decision regarding application of a land

regulation to the particular property in question, the claim is not ripe for review. . . . A challenge to the application of a regulation is not ripe when the landowners have not submitted a development plan.").

Here, the City has not had "the opportunity, using its own reasonable procedures, to decide and explain the reach" of the Zoning Amendment, and therefore Sanimax's takings claims are not yet ripe. *Palazzolo*, 533 U.S. at 620. Sanimax alleges that the Zoning Amendment "precludes Sanimax from adapting and modernizing its facility to meet future needs," and "deprives Sanimax of the ability to upgrade its odor mitigation technology and equipment." (Compl. ¶¶ 74-75, 83-84.) But Sanimax does not allege that it has attempted to seek approval for specific plans to adapt and modernize its facility or to upgrade its odor mitigation technology. Because Sanimax has not attempted to test the bounds of the City's new zoning restrictions, Sanimax's takings claims are unripe.

Sanimax argues that it should not be required to wait for a final decision applying the Zoning Amendment to its property because it would be futile to seek a variance. According to Sanimax, the City is prohibited by statute from granting Sanimax a variance. In support of this argument, Sanimax points to Minnesota Statutes § 462.357, which provides that "[v]ariances shall only be permitted when they are in harmony with the general purposes and intent of the ordinance and when the variances are consistent with the comprehensive plan." Minn. Stat. § 462.357, Subd. 6(2). In Sanimax's view, because Sanimax's core business is labeled a prohibited use under the Zoning Amendment, the City cannot grant Sanimax a variance because such a variance would not be "in harmony" with the Zoning Amendment.

But "the majority view is that, in order to invoke the futility exception, the plaintiff must have completed at least one meaningful attempt for a variance." *Church v. City of Medina*, No. CIV. 11-275 (MJD/FLN), 2012 WL 2395195, at *9 (D. Minn. June 25, 2012). Sanimax does not allege that it has made at least one meaningful attempt to receive a variance.

Moreover, the Court is not persuaded that § 462.357 bars the City from permitting Sanimax to repair or alter its facility. Sanimax relies largely on the Minnesota Court of Appeals' decision in *Altenburg v. Board of Supervisors of Pleasant Mound Township*, 615 N.W.2d 874 (Minn. Ct. App. 2000). There, the plaintiffs sought to build a feedlot on their property despite a township ordinance prohibiting feedlots. *Id.* at 876–77. The court held that it would be futile for the plaintiffs to request a conditional use permit from the township prior to challenging the ordinance's validity because the plaintiffs' desired use was prohibited by the ordinance. *Id.* at 878. But unlike the landowners in *Altenburg*, Sanimax is not seeking to begin to use its property in a manner prohibited by the Zoning Amendment. Rather, Sanimax already uses its property in a manner contrary to the Zoning Amendment, and is entitled to continue to do so as a legal, non-conforming use. Although, under *Altenburg*, it may be futile for Sanimax to request a use variance to build a new rendering facility within the light industrial district, it is not futile for Sanimax to request permission to make repairs or alterations to its existing facility.

Indeed, the City has amended section 118-64 to remove the language that limited repairs to those necessary to maintain structural integrity. Under the current ordinance, "any nonconformity . . . may be continued including through repair, replacement,

20

restoration, maintenance, or improvement, but not including expansion." (Second Decl.

Sharon Frisell, Ex. 20.) This change underscores the wisdom of the final decision rule. As

this Court explained in *Church v. City of Medina*,

> [t]he finality requirement is appropriate in land use cases because it (1) aids in the development of a full record, (2) provides a court with knowledge as to how a regulation will be applied to a particular parcel of land, (3) may obviate the need for judicial review if a variance is granted providing the requested relief, thereby supporting the principle that disputes should be decided on nonconstitutional grounds whenever possible, and (4) demonstrates the judiciary's appreciation that land use disputes are uniquely matters of local concern more appropriately suited for local resolution.

2012 WL 2395195, at *4 (citing *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342,

348 (2d Cir. 2005)). Applying the futility exception here, where the City has already taken

steps to alleviate the concerns raised by Sanimax's takings claims and absent any other

allegations in the Complaint supporting Sanimax's futility argument, would undermine the

purposes of the final decision requirement.

In sum, the Court finds that it lacks jurisdiction over Sanimax's takings claims

because those claims are not yet ripe. Accordingly, the Court grants the City's Motion to

Dismiss as to Counts IV and V.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS

HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 10] is **GRANTED

in part** and **DENIED in part** as follows:

1. Defendant's Motion to Dismiss is **DENIED** as to Counts I and II of the Complaint.

2.  Defendant's Motion to Dismiss is **GRANTED** as to Counts III, IV, and V of the

    Complaint, and these claims are **dismissed without prejudice**.

**IT IS SO ORDERED.**

Dated: October 26, 2020                          s/Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge