## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Sanimax USA, LLC,

        Plaintiff,

v.

City of South St. Paul,

        Defendant.

Case No. 20-cv-1210 SRN/ECW

**ORDER**

---

This case is before the Court on Plaintiff's Motion to Compel Discovery from Defendant City of South St. Paul and Third-Party Short Elliott Hendrickson, Inc. (Dkt. 54).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    General Background

Plaintiff Sanimax USA, LLC ("Sanimax") alleges, as part of the consolidated cases in this litigation,[1] as follows: that in 2014, Defendant City of South Saint Paul ("SSP") passed South St. Paul Ordinance No. 1279 (the "2014 Odor Ordinance"), prohibiting all "offensive or obnoxious" odors—without prescribing any objective odor verification standards and permitted SSP's city engineer to designate certain properties as

---

[1]    Sanimax originally filed two separate actions against SSP, one concerning SSP's amendment of its zoning ordinance (Case No. 20-cv-1210 (SRN/ECW) (hereinafter the "Zoning Lawsuit")) and a second regarding the City's subsequent amendment of its odor ordinance (Case No. 20-cv-1900 (SRN/ECW)).  Per a stipulation between the parties, the Court consolidated the two actions where Case No. 20-cv-1210 is the lead case on December 9, 2020.  (Dkt. 37.)

a "significant odor generator."  (Case No. 20-cv-1900 (SRN/ECW), Dkt. 1 ¶¶ 24-25.)

Any property designated as a significant odor generator would then be subject to

enhanced odor testing, need to design a comprehensive odor management plan, install

any odor control technology required by the city engineer, and face the possibility of

significant financial penalties through administrative citations for any "non-compliance"

found by the city engineer.  (*Id.* ¶ 25.)  In December 2016, SSP designated Sanimax as a

"significant odor generator" and in 2017 Sanimax filed suit challenging the 2014 Odor

Ordinance as unconstitutionally vague.  (*Id.* ¶ 29.)  In response to that lawsuit, SSP

removed Sanimax's designation as a significant odor generator and modified the 2014

Odor Ordinance to account for several of the issues identified by Sanimax in its lawsuit.

(*Id.*)  This included adding a requirement that a property owner would need to accrue

seven verified odor complaints in a six-month period to be considered a "significant odor

generator," with "verified complaints" requiring confirmation by a Nasal Ranger® Field

Olfactometer.  (*Id.* ¶ 42.)

In October of 2019, SSP proposed the zoning amendment that is the subject of the

Zoning Lawsuit, SSP Ordinance No. 1350, creating a new "light industrial zone"

covering the location of Sanimax's facility.  (*Id.* ¶ 33.)  Sanimax is the only business in

the "light industrial zone" that faces serious negative impacts from the zoning

amendment, which renders Sanimax's use of its facility a legal non-conforming use but

excludes properties with similar businesses in the immediate vicinity.  (*Id.* ¶¶ 33-39.)

The SSP City Council passed the zoning amendment on November 18, 2019.  (*Id.* ¶ 40.)

The zoning amendment went into effect on November 24, 2019, and Sanimax filed suit on May 18, 2020 challenging the zoning amendment as part of the present Consolidated Actions. (*Id.* ¶ 40.)

In May 2020, after Sanimax filed the Zoning Lawsuit, SSP enacted a new version of the odor ordinance (the "2020 Odor Ordinance"), creating "a 2-track system for dealing with businesses that are generating odors in violation [of] the ordinance." (*Id.* ¶¶ 43-44.) "Track 1" involves keeping the existing odor compliance system in place for most properties, whereby after receiving seven verified complaints—verified by the Nasal Ranger technology—the City may designate a property as a significant odor generator, generating an administrative process through which the significant odor generator works collaboratively with the City to address the issue and where citations and fines are not immediate. (*Id.* ¶ 45.) Administrative citations and financial penalties for these properties are not immediate but are only imposed months later if the property fails to address the issue and remains noncompliant. (*Id.*) "Track 2" under the 2020 Odor Ordinance applies to any property that the City deems not interested in working with the City. (*Id.* ¶ 46.) Track 2 properties, without being designated as a "significant odor generator" under the requirements of the ordinance (involving at least seven verified odor complaints using the Nasal Ranger) and without any objective verification, receive a single "warning letter for their first odor violation" and then "receive an administrative citation with a fine for each subsequent odor violation." (*Id.*) The 2020 Odor Ordinance provides no guidelines to the city engineer or city administrator about how to determine

3

whether any particular property should be placed on "Track 1" or "Track 2," and a "violation" of the 2020 Odor Ordinance by Sanimax is based solely on the city engineer's or city administrator's subjective assessment of an odor and association of that odor with Sanimax.  (*Id.* ¶¶ 47-48.)

After Sanimax filed its Zoning Lawsuit, on June 17, 2020, the City sent Sanimax a warning letter, which claimed that Sanimax had been found in violation of the 2020 Odor Ordinance and has been cited a number of times.  (*Id.* ¶¶ 51-53.)  Sanimax asserts that no other property has received an administrative citation under the 2020 Odor Ordinance and no other property is on Track 2.  (*Id.* ¶¶ 54-55.)

As part of its claims against SSP under 42 U.S.C. § 1983, Sanimax alleges unlawful retaliation on the part of SSP in the form of enacting the zoning amendment and 2020 Odor Ordinance because Sanimax filed the 2017 lawsuit.  (*Id.* ¶¶ 65-74.)

**B.     Discovery at Issue**

On November 30, 2020, SSP responded to Sanimax's written discovery requests, including requests for production of documents.  (Dkt. 56 ¶ 4; Dkt. 56-3.)  The requests for production and SSP's responses relevant to the present Motion are as follows:

> **REQUEST FOR PRODUCTION NO. 60:** All communications between you and SEH regarding odors, smells, or emissions.
>
> **RESPONSE:** The City will produce any potentially responsive documents.
>
> **REQUEST FOR PRODUCTION NO. 61:** All communications between you and Todd A. Potas, PE.
> **RESPONSE**: The City objects to Document Request No. 61 as overly broad, unduly burdensome, vague, and ambiguous to the extent it seeks production of "all communications between you and Todd A. Potas, PE," regardless of

whether they are relevant to any claim or defense or proportional to the needs of this case. The City will produce any potentially responsive documents that are relevant to any claim or defense in this case.

**REQUEST FOR PRODUCTION NO. 62**: All communications between you and Thomas A. Henning, PE & CHMM.

**RESPONSE**: The City objects to Document Request No. 62 as overly broad, unduly burdensome, vague, and ambiguous to the extent it seeks production of "all communications between you and Thomas A. Henning, PE & CHMM," regardless of whether they are relevant to any claim or defense or proportional to the needs of this case. The City will produce any potentially responsive documents that are relevant to any claim or defense in this case.

(Dkt. 56-3 at 46-47.)

While there were no specific objections in the responses based on privilege or work product, SSP offered the following general objections as part of its response:

The following general objections are in addition to, and incorporated in, each of the individual objections stated below. The failure to mention any of the following objections and qualifications in the specific objections to the requests stated below is not a waiver of such objection.

1. The City objects to Plaintiff's requests to the extent they seek documents outside the scope of discovery.

2. The City objects to Plaintiff's requests to the extent they seek information or material protected from discovery by the attorney-client privilege, work-product doctrine, or any other applicable privilege or protection. Specifically, but without limitation, any correspondence between the City and its counsel, including, but not limited to, Greene Espel PLLP, is privileged. If the City inadvertently produces any documents that are confidential or subject to a privilege or other protection, such production is without prejudice to any claim that a document is confidential or subject to privilege or protection and is not a waiver of any of the City's rights, including but not limited to the right to object to the use of any such document in connection with a motion, hearing, trial, or appeal.

(*Id.* at 1.)

In addition, Sanimax separately served a subpoena on non-party Short-Elliott-Hendrickson, Inc. ("SEH") this spring, requesting the following categories of documents:

1. All documents created by you relating to Sanimax or the 505 Hardman facility.

2. All documents provided to you by the City of South St. Paul relating to Sanimax or the 505 facility.

3. The entirety of any file maintained by you relating to odor testing of Sanimax or the 505 Hardman facility.

4. All documents relating to any designation of any person or entity as a significant odor generator under the 2014 Odor Nuisance Ordinance.

5. All documents relating to any designation of any person or entity as a significant odor generator under the 2020 Odor Nuisance Ordinance.

6. All reports, recommendations, or other documents prepared by you for the City of South St. Paul relating to the 2014 Odor Nuisance Ordinance or any citations issued thereunder.

7. All reports, recommendations, or other documents prepared by you for any person or entity relating to odor testing or odor monitoring conducted within the city limits of the City of South St. Paul.

8. All reports, recommendations, or other documents prepared by you for the City of South St. Paul relating to the 2020 Odor Nuisance Ordinance or any citations issued thereunder.

9. Any communications between you and Sanimax.

10. All communications between you and the City of South St. Paul relating to Sanimax, the 505 Hardman facility, the 2014 Odor Nuisance Ordinance, or the 2020 Odor Nuisance Ordinance.

11. Documents sufficient to demonstrate the training and/or certification of SEH employees in the use of the NasalRanger.

12. Documents sufficient to demonstrate work you have performed for the City of South St. Paul regarding entities other than Sanimax or facilities other than the 505 Hardman facility.

13. Documents sufficient to demonstrate work you have performed for entities located within the city limits of the City of South St. Paul other than the City of South St. Paul itself.

(Dkt. 56-4 (objections omitted).)  Sanimax asserts that it provided notice to SSP's counsel of the subpoena on March 12, 2021, before serving it on SEH.  (Dkt. 56 ¶ 5.) None of the objections raised by SEH in its April 14, 2021 response to the subpoena pertained to the attorney-client privilege or any other protection.  (*Id.*)  Although SEH has produced documents in response to Sanimax's subpoena, to date it has not produced any email communications between representatives of SSP and representatives of SEH.  (Dkt. 56 ¶ 10.)

Sanimax contends that it first learned on May 4, 2021, as part of the meet-and-confer process, that SSP was withholding communications with SEH based on the attorney-client privilege.  (*Id.* ¶ 11.)

On May 13, 2021, Sanimax also served nine subpoenas on current and former City officials and employees, containing a total of 18 additional document requests.  (Dkt. 67-2.)  The subpoenas sought the following categories of documents:

1.      Please produce copies of all text messages, including SMS or MMS messages, that you have sent or received from January 1, 2014 to the present mentioning or relating to Sanimax, amendments (enacted or proposed) to industrial zoning districts in South St. Paul, Minnesota, or odor issues within South St. Paul, Minnesota.

2.      Please produce copies of all posts, messages, pictures, or videos from any social media account, including (but not limited to) Facebook, Twitter,

7

Instagram, Snapchat, or TikTok, that you control from January 1, 2014 to the present mentioning or relating to Sanimax, amendments (enacted or proposed) to industrial zoning districts in South St. Paul, Minnesota, or odor issues within South St. Paul, Minnesota.

(*Id.* at 6.)

On May 27, 2021, SSP served on Sanimax its objections to these subpoenas, which included an objection "to the extent that they purport to require the production of documents that are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege." (Dkt. 67-3 at 4.)

On June 3, 2021, SSP produced a privilege log pertaining to communications with SEH listing 131 documents. (Dkt. 56 ¶ 6; Dkt. 56-5.)

**C.      SEH's Role with SSP**

In 2014, SSP entered into its initial agreement with SEH, in which, through its employees, SEH was to provide SSP with the following services:

The City of South St. Paul will benefit from SEH's support to achieve each of the following:

- Review existing odor monitoring data and identify data gaps
- Conduct supplemental odor monitoring where and when needed
- Help the City review and evaluate progress on Odor Management Plans prepared by facilities with odor issues located in South St. Paul

SEH understands the City of South St. Paul wishes to establish and enforce an Odor Pollution Ordinance (the "Ordinance"). The goal of the Ordinance is to reduce odorous activities in the City, minimize the threat to health, safety and welfare from odors, and minimize detrimental impacts on development in the City. SEH proposes to provide technical engineering support to help the City achieve these goals. South St. Paul will benefit from SEH's broad knowledge of issues related to odor and technical expertise to designing odor control systems for industrial facilities and wastewater operations.

8

The City of South St. Paul may request a broad range of services related to odor monitoring and odor control. A partial list of services that the City might request from SEH is shown below.

## SCOPE OF SERVICES

### Task 1 - Kickoff Meeting/Planning
Key members of the SSP/SEH project team will meet at the SSP offices to initiate the project. During the meeting the team will discuss project objectives, odor control efforts completed to date, available odor data, and the schedule for completing the project. A communication protocol will be established for the project. If provided by SSP, SEH will review available background information prior to the kickoff meeting. During the meeting the project team will finalize the scope of work and approach for conducting Tasks 2 and 3.

### Task 2 -Conduct Odor Monitoring
### 2.1 Identify Gaps in Odor Monitoring Data and Set Up Odor Survey
SEH will review the results of odor monitoring that was conducted in South St. Paul during the fall of 2012 and the summer of 2013 (A Summary of Odor Monitoring, Modeling, and Complaints in South St. Paul, dated July 2013, referred to as the "2013 Odor Survey") and determine if, and where, additional baseline odor monitoring may be needed. In addition, SEH may help the City obtain results of additional odor monitoring conducted at South St. Paul facilities. This review will help the City identify manufacturing facilities and activities that might be regulated under the Ordinance and identify locations in the City that need additional monitoring. This proposal is prepared with the assumption that the results of the 2013 Odor Survey will not be repeated, rather, additional monitoring will supplement this work.

### 2.2 Conduct Odor Survey
SEH will design and conduct a baseline odor survey to fill gaps in the odor monitoring database, evaluate odor control projects conducted in the City, or help identify and confirm Significant Odor Generators. SEH proposes to conduct the odor monitoring at a total of six additional locations in SSP. Each site will be visited approximately eight times.
On each survey day, SEH staff will use the City's Nasal Ranger to measure the intensity of odors at the target locations. SEH will log the results of the survey. SEH will obtain weather information (wind speed and direction, air temperature, precipitation, etc.) for each survey day from nearby sources of meteorological data.

9

The results of the monitoring will be documented in a draft report which will be provided to the City for review and comment. SEH will finalize the document based on the comments received from the City.

### Task 3 - Work with Significant Odor Generators

The City will periodically meet with owners and operators of odor producing facilities to discuss possible odor control strategies and technologies. SEH proposes to participate in these meetings when requested by the City and to provide the City with technical expertise regarding odor control strategies and technologies. The City anticipates that the Ordinance will require Significant Odor Generators to develop Odor Management Plans that document their approach and steps to be taken to control odors. SEH will review the plans on behalf of the City and offer professional opinions on the adequacy of the plans.

After a Significant Odor Generator implements an Odor Management Plan, the City may want to evaluate the effectiveness of the odor controls. SEH will help evaluate the odor management plan implementation and progress. SEH is also available to conduct follow-up odor monitoring and to help the City evaluate odor reduction effectiveness of implemented controls.

The level of effort needed for each Significant Odor Generator will vary based on the complexity of the Odor Management Plan. The budget for Task 3 includes the review of two Odor Management Plans and follow-up odor monitoring at two sites (four visits to each site).

(Dkt. 56-7, CITY006990-91; *see also* Dkt. 56-6.)  The agreement between SSP and SEH provided that SEH and its employees were not SSP's employees, designated Peter Hellegers to act as SSP's representative with respect to the services to be performed under the agreement, and provided him with "complete authority to transmit instructions, receive information, interpret, and define SSP's policies and decisions with respect to the services covered by the Agreement.  (Dkt. 56-6 at 5-6.)

In July 2014, SEH's services for SSP were expanded to include responding to odor complaints:

The City of South St Paul will benefit from SEH's support to achieve each of the following:

- Receive "hotline" odor complaint notification and respond as soon as possible with an SEH odor complaint response team member.

- Response will include traveling to South St. Paul City Hall or Fire Department to pick up the Nasal Ranger instrument with Kestrel wind meter and proceed to complaint location as quickly as safely possible.

- An odor complaint form will be completed for each response that will include weather conditions, time, date, odor observations, odor wheel descriptors and an investigation of potential source or sources of the odor, once confirmed that complaint is valid. SEH understands the City of South St. Paul wishes to establish and enforce an Odor Pollution Ordinance (the "Ordinance"). The goal of the Ordinance is to reduce odorous activities in the City, minimize the threat to health, safety and welfare from odors, and minimize detrimental impacts on development in the City.

\* \* \*

***SCOPE OF SERVICES***
***Task 4 - Odor Complaint Response***
A communication protocol will be established for this task that would allow the most appropriate SEH team member to respond. We will designate a single point of contact for complaint response, the default contact is Project Manager (PM), Todd Potas, if primary contact does not respond in 15 minutes. Cell phone numbers will be provided for primary contact and Todd Potas. Primary contact and/or PM will dispatch most appropriate SEH team member according to priority listed above. Once a team member is dispatched, we will confirm with the South St. Paul contact. We expect that most complaints will be responded to within 30 minutes of first notification with a team member at the compliant location within 1 hour.

(Dkt. 56-6 at 1-2.)  SSP and SEH's engagement has continued, as reflected in their

June 11, 2020 Supplemental Letter Agreement.  (Dkt. 56-8.)

According to SSP's City Attorney, Korine Land ("Land"), SSP retained SEH to

gather additional, more detailed odor-emissions data, and assist with the preparation and

11

implementation of an odor ordinance.  (Dkt. 64 ¶ 5.)  SSP retained SEH (as opposed to creating one or more payroll positions) because SSP wanted to take advantage of SEH's unique expertise in the field of odor emissions and SEH had the resources to dedicate staff to respond much more quickly to complaints regarding odor emissions than SSP. (*Id.*)  SEH, under SSP's supervision, has been almost exclusively responsible for SSP's odor monitoring, analysis, and control efforts.  (*Id.*)  SEH engineer, Thomas Henning ("Henning"), claimed that SSP retained SEH to gather data regarding odor emissions by businesses operating within SSP, to provide advice regarding SSP's drafting of an odor-emissions ordinance (Ordinance No. 1279), and to support SSP's engagement with the owners and operators of odor-producing businesses.  (Dkt. 65 ¶ 4; Dkt. 66 ¶ 4.)

Land also asserted that, relying in part on the odor-emissions data gathered by SEH, the SSP City Council adopted Ordinance No. 1279 in July 2014, which regulated odor emissions by property owners within SSP by adding Chapter 110, Article VII to the City Code and that SSP's attorneys provided legal advice to SSP regarding that ordinance and, in formulating that legal advice, necessarily relied on the data gathered by SEH and on SEH's expertise in the field of odor emissions.  (Dkt. 64 ¶ 5.)  Following the adoption of the 2014 ordinance, SEH also responded on SSP's behalf to complaints about odor emissions, maintained records of odor complaints, and conducted related analyses of odor sources, which at times included advising SSP and its attorney.  (Dkt. 65 ¶ 5; Dkt. 66 ¶ 5.)  Land asserts that SEH regularly provided drafts of odor-monitoring reports to Land for review to determine whether they were in compliance with the Minnesota

12

Government Data Practices Act and in anticipation of litigation relating to SSP's enforcement efforts.  (Dkt. 64 ¶ 7.)  Some of these communications between Land or her firm and SEH were critical not only for the initial drafting and adoption of Ordinance No. 1279, but also to assist attorneys in advising SSP on the potential for legal action relating to SSP's odor enforcement efforts and regarding SSP's conduct in legal actions by Sanimax relating to those enforcement efforts.  (*Id.* ¶ 9.)  SEH represented that it needed the advice of SSP's attorney to help direct SEH's work.  (Dkt. 65 ¶ 9.)  SEH claims it also provided information to SSP's attorney to facilitate the attorney's ability to provide legal advice, even without SSP involvement, which included when SEH needed SSP's attorney's advice to understand how the City Code applied to its work, or when it has provided technical information related to odors.  (*Id.*)  Hellegers, a former SSP city planner/zoning administrator, claimed that while SSP employees oversaw SEH's odor-related work for the City, and served as SEH's primary point of contact to SSP on a day-to-day basis, such as for straightforward questions relating to responses to odor complaints, for issues requiring legal advice or assessment—such as but not limited to questions relating to interpretation of the City Code or questions relating to potential administrative actions or litigation—SEH typically contacted the City Attorney and included some combination of SSP employees as part of these communications.  (Dkt. 66 ¶ 7.)

With respect to the communications involving SEH that were listed by SSP on its privilege log, Land represented as follows:

I reviewed the City's privilege log of communications to which SEH was a party (ECF 56-5), prepared in connection with Plaintiffs motion to compel. I was the sender or a recipient of nearly all of the communications listed on the log, and I recall SEH seeking legal advice or providing information to LGM to facilitate LGM's provision of legal advice regarding the topics reflected on the log and at approximately the times reflected on the log.

I have also reviewed the emails and attachments listed at lines 1, 1-A, 2, 2-A, 2-B, and 3 of the privilege log (in the column "Priv Log ID"). It is my understanding that Plaintiff referenced lines 1, 2, and 3 of the log in its motion to compel. All of these were emails and attachments were sent to me in the course of my work for the City, and all involved requests for my legal advice regarding issues relating to the City's odor-monitoring and odor-mitigation efforts and SEH's work in connection with those efforts.

(Dkt. 64 ¶¶ 11-12.)

## II.   <u>LEGAL STANDARD</u>

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 45.  Rule 45 of the Federal Rules of

Civil Procedure permits a court, in its discretion, to quash or modify any subpoena that

compels disclosure of privileged or other protected material, if no exception or waiver

applies, or subjects a person to an undue burden.  *See* Fed. R. Civ. P. 45(c)(3)(A)(iii) and

(iv); *see also Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 728 (8th Cir. 2002).

In general, confidential communications between individuals and attorneys for the

14

purpose of obtaining or rendering legal advice are privileged.[2]  *See Upjohn v. United States*, 449 U.S. 383, 394-95 (1981); *see also United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977) (The attorney-client privilege is "the long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client.").  The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co.*, 449 U.S. at 389.  "The party asserting the attorney-client privilege . . . bears the burden to provide a factual basis for its assertions." *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 528 (D. Minn. 2002) (citing *Hollins v. Powell*,

---

[2]      Federal common law applies to the issue of privilege where subject matter jurisdiction is premised on a federal question, whereas state law applies to the issue of the attorney-client privilege when the subject matter jurisdiction is based on diversity.  *See* Fed. R. Evid. 501; *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir.), *cert. denied*, 484 U.S. 917 (1987); *see also Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2014 WL 1309095, at *5 (D. Minn. Apr. 1, 2014) (citations omitted).  In this case, Sanimax has asserted both federal and state law claims.  Where there are both state and federal claims, if the evidence sought is only relevant to the state claims, then state law applies; however, if the evidence sought is relevant to both the state and federal claims, then federal common law applies.  *See Lykken v. Brady*, No. CIV. 07-4020-KES, 2008 WL 2077937 at *4 (D.S.D. 2008 May 14, 2008) (citing *Hansen v. Allen Memorial Hosp.*, 141 F.R.D. 115, 121 (S.D. Iowa 1992) (collecting cases)) ("The court then examined decisions from other courts and concluded that, where the issue is the discoverability of evidence that is relevant to both the federal and the state claims, courts have consistently held that federal law determines the existence and scope of any asserted privilege."); *see also Danielson v. Huether*, No. 4:18-CV-04039-RAL, 2020 WL 2922173, at *4 (D.S.D. June 3, 2020) ("Danielson's claims are predominantly federal, so federal common law governs any assertion of privilege by the State and City.").  As such, the Court will apply federal common law to the issue of privilege.

773 F.2d 191, 196 (8th Cir. 1985)); *see also In re Grand Jury Proceedings*, 791 F.2d 663, 666 (8th Cir. 1986).

## III.    ANALYSIS

### A.    Waiver of the Attorney-Client Privilege

Sanimax asserts as an initial matter, that both SSP's current assertion of the attorney-client privilege and SEH's assertion on SSP's behalf have been waived because each entity failed to assert such an objection in a timely fashion.  (Dkt. 55 at 14-15.)  This Court has broad discretion with respect to the waiver of objections to discovery, especially as it relates to the attorney-client privilege.  *See Cargill, Inc. v. Ron Burge Trucking, Inc*., 284 F.R.D. 421, 425-26 (D. Minn. 2012).  While there is no dispute that SSP failed to provide specific timely objections to Request Nos. 60, 61, and 62, it did provide a general objection at the beginning of its responses, objecting to the requests "to the extent they seek information or material protected from discovery by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection."  (Dkt. 56-3 at 1.)  While not best practice, in light of this objection, the fact that Sanimax has not articulated any real prejudice from SSP's failure to initially provide specific objections to Request Nos. 60, 61, and 62 or the SEH subpoena, and the importance of the privilege, the Court finds good cause exists to not impose the draconian sanction of stripping a party of the protections afforded by the attorney-client privilege and will proceed to analyze the merits of the privilege as to the documents at issue.  *See Bores v. Domino's Pizza, LLC,* No. CV 05-2498 (RHK/JSM), 2007 WL 9735903, at *37

(D. Minn. Jan. 25, 2007) (citation omitting) (waiving all untimely objections except for the attorney-client privilege); *see also Cargill, Inc.*, 284 F.R.D. at 426 (considering in part the prejudice to the opposing party and whether waiver would impose a harsh result).

## B.   Application of the Attorney-Client Privilege with Respect to Communications Involving SEH as an Independent Contractor of SSP

In *Upjohn*, the Supreme Court held that a corporation's privilege extends to communications between corporate employees and corporate counsel as long as the communications are made at the direction of corporate superiors in order to secure legal advice.  449 U.S. at 390-94.  The Eighth Circuit has applied *Upjohn* and *Diversified* to cover communications between an entity's counsel and outside consultants under certain circumstances.  *In re Bieter*, 16 F.3d 929, 937-38 (8th Cir. 1994).  In *Bieter*, the Eighth Circuit concluded that "too narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship with the client, possess the very sort of information that the privilege envisions flowing most freely."  *Id.* at 937-38.  In *Bieter*, the independent contractor had "varied and extensive" duties, worked in the company's office, had daily interactions with the manager of that office, attended meetings with counsel, received communications from attorneys, and appeared at public hearings on behalf of the company.  16 F.3d at 933-34.  Further, due to his work for the company, the Eighth Circuit noted that the independent contractor likely possessed information relevant to the dispute that no others possessed and was "precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the legal entity's]

17

reasons for seeking representation." *Id.* at 938. "Although the Eighth Circuit has not

addressed attorney-client privilege in the context of government agencies and their

contractors, there is no reason to find that this privilege does not also extend to

government agencies." *Harvey v. Great Circle*, No. 4:19-CV-902-NAB, 2020 WL

6544237, at *3 (E.D. Mo. Nov. 6, 2020) (citation omitted).

Here, Sanimax argues that *Beiter*'s holding does not apply to this case, as SEH

does not fit the limited definition of the functional equivalent of an employee. (Dkt. 55 at

19-24.) Sanimax supports this proposition in part by asserting that SEH is an

independent contractor and relying on the agreement between SEH and SSP making it

clear that SEH and its employees are not SSP employees. (*Id.* at 19.) On this basis,

Sanimax argues that SEH cannot be the client of the SSP attorneys. (*Id.* at 19.)

However, this argument was rejected by the Eighth Circuit in *Beiter* finding that "too

narrow a definition of 'representative of the client' will lead to attorneys not being able to

confer confidentially with nonemployees who, due to their relationship with the client,

possess the very sort of information that the privilege envisions flowing most freely" and

in certain circumstances the privilege will apply to communication between a principal's

attorney and an independent contractor doing work for the principal. 16 F.3d at 933-34,

937-38.

The next argument raised by Sanimax is that *Beiter* does not reach

communications between a municipality and its independent consultant retained to

conduct odor testing and related professional services. (Dkt. 55 at 19-21.) The Court

18

disagrees and finds that SSP and SEH are sufficiently interrelated for the purposes of enforcement and development of the SSP odor ordinances at issue in this case, and that the SEH personnel who handle these duties for SSP are the functional equivalent of SSP employees.  Indeed, the 2014 agreement between SSP and SEH provided that SEH was to: provide technical engineering support to help SSP deal with odor control and gave SEH the task of conducting odor monitoring; reporting those results to SSP; responding to public odor complaints; and assisting SSP with evaluating the odor management plan implementation and progress of odor generators.  (Dkt. 56-7, CITY006990-91; *see also* Dkt. 56-6.)  Moreover, SSP's attorney represented that SSP retained SEH instead of creating a payroll position dealing with odor control because SSP wanted to take advantage of SEH's unique expertise in the field of odor emissions and because SEH had the resources to dedicate its staff to respond much more quickly to complaints about odor emissions than SSP could.  (Dkt. 64 ¶ 5.)  Indeed, under SSP's supervision, SEH has been almost exclusively responsible for SSP's odor monitoring, analysis, and control efforts on behalf of SSP, it has assisted SSP attorneys with drafting and adopting odor related ordinances, and has prepared odor-monitoring reports that have been in anticipation of litigation.  (Dkt. 64 ¶¶ 5, 7, 9; Dkt. 65 ¶¶ 4-7; Dkt. 66 ¶¶ 3-6.)  There is no real dispute that SEH spearheaded monitoring for SSP and assisted SPP with compliance.  As a smaller city, SSP chose to contract with a company with expertise and available personnel in the area of odor compliance, as opposed to hiring employees to conduct these services for SSP.  In sum, with respect to providing odor-control-related city

services, which are the subject of this suit, SEH and its employees acted as the functional equivalent of an employee of SSP.

Sanimax, citing to *Stan Koch & Sons Trucking, Inc. v. Am. Interstate Ins. Co.*, No. 18-cv-2945, 2020 WL 2111349, at *6-7 (D. Minn. May 4, 2020), argues that *Bieter* cannot apply to this case because SSP's counsel did not retain SEH to help provide legal advice. (Dkt. 55 at 21-22.) However, that is not the test under either *Upjohn* or *Bieter*. Under Sanimax's theory, even an SSP's employee's communication with its attorney would not be protected by the attorney-client privilege unless the employee was hired to help to provide it with legal advice. Such a finding would render it impossible for cities, and for that matter, any legal entity, to obtain legal advice. In sum, while whether a contractor was hired to help attorneys with legal advice may be relevant to the applicability of the privilege, it is not determinative. Indeed, the court in *Koch* did not find that the privilege did not apply only because the third party was not retained to provide legal advice, but also noted that "[n]or does Koch argue that the contractor was the 'functional equivalent' of an employee as described in *Bieter* or *Hudock*." 2020 WL 2111349, at *7.

Here, the evidence before the Court is that as part of its duties, SEH needed the advice of the City Attorney to help direct its work, and SEH has provided information to SSP's attorney to facilitate the City Attorney's provision of legal advice, even without SSP involvement, which included when SEH needed SSP's City Counsel's advice to understand how the City Code applied to its work, or when it provided technical

20

information related to odors.  (Dkt. 65 ¶ 9.)  Further, while SSP employees oversaw

SEH's odor-related work for the City, and served as SEH's primary point of contact to

SSP on a day-to-day basis, such as for straightforward questions relating to responses to

odor complaints, for issues requiring legal advice or assessment—such as but not limited

to questions relating to interpretation of the City Code or questions relating to potential

administrative actions or litigation—SEH typically contacted the City Attorney and

included some combination of SSP employees as part of these communications  (Dkt. 66

¶ 7.)  These facts further bolster a finding that SEH was the functional equivalent of a

SSP employee for the purposes of SSP odor control.  *See Hudock v. LG Elecs. U.S.A.,*

*Inc*., No. 0:16-CV-1220-JRT-KMM, 2019 WL 5692290, at *4-5 (D. Minn. Nov. 4, 2019)

(noting that the fact that the independent contractor sought legal advice from the

principal's attorneys with respect to their work for the principal, as opposed to their own

attorneys, in part supported a finding that the independent contractor was the functional

equivalent of an employee for the purposes of the attorney-client privilege pursuant to

*Bieter*).

In sum, based on the evidence before the Court, the Court finds that because SEH

was the entity essentially charged, in large part, with carrying out odor compliance for

SSP, SEH's employees are "precisely the sort of person[s] with whom a lawyer would

wish to confer confidentially in order to understand [the city's] reasons for seeking

representation" at least with respect to the issue of SSP's efforts with respect to odor

control that are at issue in this case.  *Bieter*, 16 F.3d at 938 (citations omitted).  Therefore,

the Court finds that the attorney-client privilege applies to communications between SEH and SSP's legal counsel insofar as the documents at issue otherwise qualify as privileged communications.

## C.      Applicability of the Attorney-Client Privilege to the Documents at Issue

Given that the Court has determined that SEH is the functional equivalent of an employee that justifies the application of the attorney-client privilege, the Court must still determine whether the elements of the test set forth in *Diversified* have been satisfied:

> [T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

572 F.2d at 609 (en banc); *see also Bieter*, 16 F.3d at 936, 938.

It is important to emphasize the attorney-client privilege applies only to confidential communications made to facilitate legal services, and does not apply where a lawyer acts as a scrivener or business advisor.  *See United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (citations omitted); *see also United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) (citation omitted) ("[W]hen an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply."); *Diversified*, 572 F.2d at 602 ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.") (citations omitted).

22

As set forth previously, SSP produced a privilege log with 131 line items supporting its privilege assertions.  Sanimax took issue with the privilege log, noting in part that the log does not adequately set forth how they related to the rendition of legal advice.  (Dkt. 55 at 26-28.)  In view of the dispute over the privilege log and the application of the *Diversified* factors, the Court ordered at the hearing on this Motion a limited *in camera* review of a representative sample of twenty-five documents selected by the parties after a meet-and-confer.  These documents, denoted by the number they are listed on the privilege log, were then provided to the Court by SSP for an *in camera* inspection.  The Court makes the following rulings with respect to these documents:

- Privilege Log 1 and 1-A:  The Court concludes that these documents are not protected by the attorney-client privilege.  While legal counsel is copied on the email, and the email invites questions or comments, Todd Potas with SEH was not seeking advice regarding any legal issue and merely provided his notes (found at Privilege Log 1A) on questions raised at what appears to be a meeting with a third party regarding the Odor Ordinance.  *See Diversified*, 572 F.2d at 602 (explaining that, for a communication to an attorney to be privileged, "the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity").  "A communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Id.*  For these reasons, Sanimax's Motion to Compel is granted as to Privilege Log 1 and 1-A.

23

- Privilege Log 2, 2-A, and 2-B:  The privilege log describes these documents as providing a draft of an odor monitoring report from SEH to SSP and its legal counsel for their review and input.  The Court finds that the communications as to this draft report sought legal advice from counsel regarding the contents of the report that pertain to SEH's duties for SSP with respect to odor monitoring.  *See Scalia v. Reliance Tr. Co.*, No. 17-CV-4540 (SRN/ECW), 2020 WL 2111368, at *6 (D. Minn. May 4, 2020) (communications related to drafts are generally protected by attorney-client privilege, since preliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys) (citation omitted).  The Court also denies the Motion as the report itself at 2B, as SSP has asserted the work product doctrine and Sanimax has not challenged that designation.

- Privilege Log 3 and 6:  The Court finds the communications to SSP's legal counsel regarding the development of a website odor complaint form is a request for legal advice and is protected by the attorney-client privilege, and SEH had a reason to be included in the communication given its involvement with responding to odor complaints for SSP.  Therefore, Sanimax's Motion to Compel is denied as to Privilege Log 3 and 6.

- Privilege Log 7 and 7A:  The privilege log refers to these documents as providing a draft of an odor monitoring report to SSP and its legal counsel for their review and input.  The Court finds that the communication from SEH disseminating this

24

draft report was seeking, in part, legal advice from counsel regarding the report. The Court also denies the Motion as the report itself at 7A, as SSP has asserted the work product doctrine and Sanimax has not challenged this designation.

- Privilege Log 38: The privilege log provides that the email relates "to Sanimax's proposed additions to its 505 Hardman Avenue building, for City Attorney and staff review, forwarded to SEH on 3/20/15 at 11:39 a.m." (Dkt. 56-5 at 3.) The unprivileged email forwarding this communication was between Hellegers at SSP and Potas at SEH. There is no indication that Hellegers forwarded this allegedly privileged communication to Potas in order for SSP to seek legal advice, especially where the deadline contained with the allegedly privileged communication had passed before Hellegers forwarded the email and no attorney was involved in the forwarded communication to SEH. On this basis, the Court finds that the email at Privilege Log 38 should be produced and the Motion to Compel is granted as to this email.

- Privilege Log 47: The privilege log states that the subject of the email is "Strategy related to odor monitoring." (Dkt. 56-5 at 3.) Although Land is copied on this email, she is not addressed in the greeting or otherwise in the email, the subject matter only pertains to the logistics of odor monitoring such as procedures and timing, and there is nothing else in the email or otherwise in the record suggesting that it involves legal advice relating to or arising from such monitoring. "[A] party cannot make a communication privileged simply by including an attorney in

25

the communication." *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 448 (D. Minn. Apr. 28, 2011).  As such, the email at Privilege log 47 must be produced to Sanimax and the Motion to Compel is granted as to this email.

- <u>Privilege Log 54</u>:  The email at issue is in response to legal advice provided by Land with respect to monitoring and Potas had a need to know that information given that SEH was tasked with that monitoring.  As such, the Court finds that the communication is protected by the attorney-client privilege.  Sanimax's Motion to Compel is denied as to Privilege Log 54.

- <u>Privilege Log 57</u>:  The privilege log states that the subject of the email is "Draft report on Concord Meats odor monitoring, for City Attorney and staff review." (Dkt. 56-5 at 4.)  However, this communication does not deal with seeking or receiving legal advice, and only pertains to an exchange dealing with SSP city engineer John Sachi's thoughts on the report in an email at Privilege Log 56 (not at issue as part of the *in camera* review), including formatting of the report, which has no bearing on any legal matter.  The email did not otherwise involve Land, except for the fact that she was included in the email chain.  While the initial email of that chain at Privilege Log 55 (which is also not at issue as part of the *in camera* review), may be privileged, the subject of the interaction between Sachi and Potas at Privilege Log 56 and 57 should be produced.  As such, Sanimax's Motion to Compel is granted as to Privilege Log 56 and 57.

- <u>Privilege Log 61</u>: The privilege log states that the subject of the email is "Draft reports on Twin City Hide and Twin City Tanning odor observations." (Dkt. 56-5 at 4.)  However, the communication at issue does not deal with seeking or receiving legal advice, and instead involves an exchange regarding Sachi's concerns regarding the procedure and efficacy of monitoring as to Twin City Hide and Twin City Tanning and Potas' suggestions.  While the initial email of that chain at Privilege Log 58 (which is not at issue as part of the *in camera* review), may be privileged, the communications between Sachi and Potas at Privilege Log 59, 60, and 61 are more akin to business discussions regarding how to properly monitor odors, as opposed to soliciting legal advice.  Therefore, based on this Court's *in camera* review, the Motion to Compel as to these documents is granted and the communications at Privilege Log 59, 60, and 61 should be produced to Sanimax.

- <u>Privilege Log 63</u>:   This email seeks input from a number of individuals arising out of a report drafted for SSP by SEH, including from Land as the SSP's attorney.  Moreover, SEH had a need to know those individuals' input given that it was tasked with the monitoring and reporting on the results.  As such, the Court finds that the communication is protected by the attorney-client privilege. Sanimax's Motion to Compel is denied as to Privilege Log 63.

- <u>Privilege Log 66</u>:  This email seeks input from a number of individuals arising out of a report drafted for SSP by SEH, including from Land as SSP's attorney.  As

such, the Court finds that the communication is protected by the attorney-client privilege. Sanimax's Motion to Compel is denied as to Privilege Log 66.

- Privilege Log 76: While this email, as well as the subsequent email (Privilege Log 77, which was not part of the emails chosen by the parties), deal with legal representation by Land of SSP, third party Ryan Schroeder of Schroeder Properties was included in these communications. There is no evidence that Schroeder needed to be part of these communications in order for SSP to receive legal services, let alone that he was someone within SSP's municipal structure who needed to know its contents. *See Diversified*, 572 F.2d at 609; s*ee also United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998) (citations omitted) ("Voluntary disclosure of attorney client communications expressly waives the privilege. . . ."). Therefore, Sanimax's Motion to compel as to Privilege Log 76 and 77 is granted.

- Privilege Log 84: The subject matter of this email pursuant to the privilege log is "Twin City Hide revised odor mitigation plan." (Dkt. 56-5 at 6.) Based on this Court's *in camera* review, it finds that this email is protected by the attorney-client privilege, as the communication seeks legal advice from Land as to the odor mitigation plan, and SEH needed to be on the communication, as such input would affect its performance on behalf of SSP, as tasked by SSP. Sanimax's Motion to Compel is denied as to Privilege Log 84.

28

- Privilege Log 87:  The subject matter of this email pursuant to the privilege log is "Drafts of annual odor monitoring reports" from SEH to Land and SSP officials (Dkt. 56-5 at 6.)  Based on its *in camera* review, the Court finds that this email is protected from disclosure by the attorney-client privilege, as SEH seeks legal advice from Land as to odor monitoring reports regarding its performance on behalf of SSP, as tasked by SSP.  Sanimax's Motion to Compel is denied as to Privilege Log 87.

- Privilege Log 94: This email merely discusses an inquiry from SciCorp regarding sales.  (Dkt. 56-5 at 6.)  Land is copied on the discussion about use of a product sold by SciCorp.  The discussion of using a product in relation to odor control is more akin to a city business matter related to product feasibility, as opposed to seeking or receiving a legal advice.  As such, the Court finds that the attorney-client privilege does not apply to Privilege Log 94 and Sanimax's Motion to Compel is granted as to this email.

-  Privilege Log 101:  Based on this Court's *in camera* review, the Court finds that this email is covered by the attorney-client privilege, as Land provides SSP with legal advice that depended on SEH's direct input.  Sanimax's Motion to Compel is denied as to Privilege Log 101.

- Privilege Log 113:  The subject matter of the email is "Issues relating to Twin Cities Hide and Tanning."  Based on this Court's *in camera* review, the Court finds that this email is covered by the attorney-client privilege.  It seeks legal

services from Land in response to a third-party attorney who contacted multiple persons, including Henning at SEH, for a response to a question. Sanimax's Motion to Compel is denied as to Privilege Log 113.

- Privilege Log 115: The subject matter of this email pursuant to the privilege log is "New odor management plan from Twin City Hide, for City Attorney and staff review and input." (Dkt. 56-5 at 7.) Based on this Court's *in camera* review, the Court finds that this email is covered by the attorney-client privilege, as SEH sought legal advice from Land as to an odor management plan within the scope of its odor management duties on behalf of SSP. Indeed, the following email at Privilege Log 116 and 118 (not part of the emails selected for review, but part of the same chain) dealt with Land providing her response to SEH's request for input. Sanimax's Motion to Compel is denied as to Privilege Log 115, 116, and 118.

- Privilege Log 124 and 130: These emails appear to be identical. The communications deal with odor testing reports that Henning at SEH, in the scope of SEH's work for SSP sent Land and Healy for their review. Given that SEH was seeking legal advice from Land for work performed for SSP, the Court finds that the emails are protected from disclosure by the attorney client privilege. Sanimax's Motion to Compel is denied as to Privilege Log 124 and 130.

- Docket 80-5: Subsequent to the hearing on the Motion to Compel, Sanimax moved to seal its motion seeking leave to depose SSP city council members (Dkt. 76) because SSP notified them that the motion referenced an email that it claims

30

was privileged and inadvertently produced.  Based on the Court's review of the

file and Sanimax's description of the email, the Court believed that the email at

issue  was Docket Entry 80-2.  (Dkt. 88.)  However, SSP notified the Court that

Sanimax was incorrect and that the email at issue was Docket Entry 80-5.  (Dkt.

89.)  Based on this assertion, the Court orders that Docket Entry 80-2 be unsealed.

As to Docket Entry 80-5, the Court finds that the April 2, 2020 email sent at 11:53

a.m. (which also appears to be found at Privilege Log 95) is protected by the

attorney-client privilege because it conveys legal advice from Land with respect to

options available to SSP dealing with odor problems allegedly caused by Sanimax

and SEH has a need to know this information as it was tasked with dealing in large

part with odor control for SSP and here was tasked with carrying out certain

actions based on the legal advice provided.  This finding is without prejudice to

any good faith assertion by Sanimax of waiver of the privilege.  To the extent that

SSP claims that CITY003199-3200 in Docket Entry 80-5 is protected from

disclosure under the privilege, which is unclear, the Court finds that the documents

should be produced to the extent that they have not been provided to Sanimax, as

there is no indication that the communications involve legal counsel and there is

no indication that the communications were made for the purposes of seeking legal

advice.

* * *

Given that the *in camera* inspection of the sample documents provided by SSP has yielded a significant number of documents not protected by the attorney-client privilege, SSP and SEH will be required to provide the remaining documents at issue in the privilege log involving SEH to the Court for an *in camera* inspection.  However, in light of the Court's Order, SSP and SEH will first be required to review the remaining documents on the privilege log to determine whether they believe any of the remaining documents should be produced to Sanimax in light of this Court's findings on privilege as to the documents reviewed by the Court.  The parties should then meet and confer to determine whether agreement can be reached as to any of the remaining documents before they are submitted to the Court.  The Court will reserve its decision with respect to Sanimax's request for its reasonable expenses under Rule 37 as part of its subsequent *in camera* inspection.

## IV.   <u>ORDER</u>

Based upon on the motion and the documents filed under seal, as well as all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion to Compel Discovery from Defendant and Third-Party Short Elliott Hendrickson, Inc. (Dkt. 54) is **GRANTED** in part and **DENIED** in part as follows:

a.     The Motion to Compel is **GRANTED** as to the specific documents referenced at Privilege Log 1, 1-A, 38, 47, 56, 57, 59, 60, 61, 76, 77, and 94.  These

documents shall be produced to Plaintiff no later than fifteen (15) days after the issuance of this Order, unless this Order is appealed.

      b.      The Motion to Compel is **DENIED** as to the specific documents referenced at Privilege Log 2, 2-A, 2-B, 3, 6, 7, 7-A, 54, 63, 66, 84, 87, 101, 113, 115, 116, 118, 124 and 130.

      c.      The Motion to Compel is **GRANTED** in part and **DENIED** in part as to Docket Entry 80-5 consistent with this Order.

      2.      SSP and SEH are required to provide the remaining documents at issue in the privilege log involving SEH for an *in camera* inspection. SSP and SEH must first review the remaining documents in the privilege log to determine whether they believe any of the remaining documents should be produced to Sanimax in light of this Court's findings on privilege as to the documents reviewed by the Court. The parties shall then meet and confer to determine whether agreement can be reached as to any of the remaining documents before they are submitted to the Court. The remaining documents shall be provided to the Court for an *in camera* inspection no later than fifteen (15) days after the issuance of this Order, unless this Order is appealed.

      3.      Docket Entry Docket Entry 80-2 shall be **UNSEALED** consistent with the Local Rules. Docket Entry Docket Entry 80-5 shall remain **SEALED** until further notice from the Court.

DATED: October 18, 2021               *s/Elizabeth Cowan Wright*
                                    ELIZABETH COWAN WRIGHT
                                    United States Magistrate Judge