# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Sanimax USA, LLC,

        Plaintiff,

v.

        **MEMORANDUM OPINION AND ORDER**

City of South St. Paul,

        Civil No. 20-1210 ADM/LIB

        Defendant.

---

Matthew J. Salzman, Esq., Stinson LLP, Kansas City, MO; Andrew W. Davis, Esq., Stinson LLP, Minneapolis, MN; and Kimberly K. Dodd, Esq., Foley & Lardner LLP, Milwaukee, WI, on behalf of Plaintiff.

John M. Baker, Esq., and Katherine M. Swenson, Esq., Greene Espel PLLP, Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On December 1, 2022, the undersigned United States District Judge heard oral argument on Defendant City of South St. Paul's ("City") Motion for Summary Judgment [Docket No. 142] and Plaintiff Sanimax USA, LLC's ("Sanimax") Motion for Partial Summary Judgment [Docket No. 154]. For the reasons set forth below, the City's Motion is granted and Sanimax's Motion is denied.

## II. BACKGROUND

In this consolidated lawsuit[1] arising under 42 U.S.C. § 1983, Sanimax challenges two City ordinances as unconstitutional and claims the ordinances were adopted to retaliate against

---

[1] The consolidated cases are Sanimax USA, LLC v. City of South St. Paul, Case No. 20-cv-1210 (ADM/LIB) (the "Rezoning Case"); and Sanimax USA, LLC v. City of South St. Paul, Case No. 20-cv-1900 (SRN/ECW) (the "Odor Case") (administratively closed December 9, 2020). Unless otherwise specified, all docket citations are to the Rezoning Case.

Sanimax for suing the City in 2017.  One of the ordinances (Ordinance No. 1350) was passed in 2019 and rezoned a 115-parcel area, including three parcels owned by Sanimax, from Industrial to Light-Industrial (the "Rezoning Ordinance").  Sanimax claims that the Rezoning Ordinance violates the Fourteenth Amendment's equal protection clause.

The other ordinance (Ordinance No. 1356) was passed in 2020 and amends the City's existing odor ordinances by clarifying that the City may use the administrative citation process to enforce violations of the City's odor ordinances (the "Odor Amendment").  Sanimax claims that the Odor Amendment is unconstitutionally vague on its face and as applied to Sanimax.

The City seeks summary judgment on all claims, arguing that the ordinances withstand Sanimax's constitutional challenges and that the retaliation claims fail because the City would have adopted both ordinances regardless of Sanimax's protected activity.

**A.  Sanimax**

Sanimax has operated an animal rendering and used cooking oil processing facility in the City for more than 50 years.  Dodd Decl. Ex. ZZ [Docket No. 166-1] (Graham Expert Report) ¶ 14.  Sanimax is located in the BridgePoint Business Park, an area of the city north of Interstate 494 that was once dominated by stockyards and related businesses.  Frisell Decl. Ex. 2 [Docket No. 13-2] at 79.

Although the last stockyard in the City closed in 2008, some of the industries associated with the former stockyards continue to operate in the City.  Id. at 78.  These industries emit foul odors into the community.  Id.; Graham Expert Report ¶ 15.  As a result, the City receives numerous complaints from citizens each year about odors in the City.  See generally First Harris Decl. at Exs. 1, 3 [Docket No. 146].

The City's odor consultant, Short Elliott Hendrickson Inc. ("SEH"), has identified five businesses whose operations have the potential to generate odors in the City: Long Cheng Livestock & Meat Processing, Concord Fresh Meats, Sanimax, Twin City Hide, and Twin City Tanning.  First Harris Decl. Ex. 2 [Docket No. 146] (Henning Expert Report) at HENNING004. Of these five businesses, Sanimax has generated more than ten times as many verified odor complaints[2] as any other business in the City according to odor monitoring conducted by SEH from 2015 through 2021.  See id. at HENNING008 (showing Long Cheng and Concord Meats with a combined total of 3 verified complaints, Twin City Hide and Twin City Tanning with a combined total of 7 verified complaints, and Sanimax with a total of 79 verified complaints).

Sanimax has invested in odor mitigation technology to reduce the odors associated with its rendering operations.  Graham Expert Report at 6.  Nevertheless, mechanical and procedural failures within Sanimax's facility contribute to Sanimax's odor emissions.  See, e.g., First Harris Decl. Exs. 58-59, 62-63, 72-73 (mechanical failures); id. Exs. 8-21, Ex. 104 at SANIMAX-0014685 (procedural failures).  Examples of procedural failures at the Sanimax facility that have resulted in the emission of foul odors include: failure to monitor chemical totes to ensure that the chemicals are flowing; allowing caustic totes to become empty; leaving facility doors open, thereby causing air scrubbers to become ineffective; failing to respond to system alarms; failing to add antifoam to a scrubber; improper chemical dosing levels, and failing to clean and regularly monitor equipment.  Id. Exs. 8-21, Ex. 104 at SANIMAX-0014685.

---

[2]  Verified odor complaints are complaints where the odor is measured as having 7 or more odor units using a Nasal Ranger field olfactometer, and the source of the odor is confirmed.  First Harris Decl. Ex. 34 [Docket No. 149] at § 110-141; id. Ex. 35 [Docket No. 149].

**B. City's 2030 Comprehensive Plan**

In 2008, after the last City stockyard had closed, the City adopted its Comprehensive Plan for 2010-2030.  Frisell Decl. Ex 13 [Docket No. 13-13].  The 2030 Plan recognized the role of stockyards and meatpacking plants in the City's history, but stated that "with the closing of the stockyards, . . . [t]he task before us is to create a new image for South Saint Paul.  Davis Decl. Ex. B [Docket No. 157] (2030 Plan) at CITY000822.

Regarding industrial land uses, the 2030 Plan stated that the BridgePoint area "has transitioned into a primarily light-industrial area with a few remaining pockets of general industrial uses."  Id. at CITY000840-41.  Accordingly, the Plan designated the future land use for that area as "light industrial."  Id. at CITY000848.

The 2030 Plan also stated that the Interstate 494 corridor through the City is an "important gateway to the community."  Id. at CITY 000842.  The City's vision was "to have this corridor showcase the high quality redevelopment efforts in the area."  Id.  The plan for the 494 corridor was to establish limits on the types of uses and architectural standards for the 494 corridor sites located north of Interstate 494 to Armour Avenue and south of Interstate 494 to Richmond Street.  Id.  The Plan also designated the future land use for the 494 corridor as "light industrial."  Id. at CITY000848.

The 2030 Plan noted that that foul odors from some of the industries that formerly were associated with the stockyards would need to be overcome to achieve the City's vision for the development of the BridgePoint and 494 corridor areas.  Id. at CITY000840, CITY000843.  The Plan stated that the City would "need to work comprehensively to resolve odor issues" by identifying the source of the nuisance odors and working with the industries to mitigate the odors or, "if mitigating the odors are not possible or feasible then working with the industries to

determine if there are alternate locations for those uses." Id. at CITY000843.  An additional challenge to the redevelopment of the 494 corridor was that "only a portion of the south side of the Corridor is protected by floodwalls/levees." Id. at CITY000842.

The odor issues referenced in the 2030 Plan remained a concern for the City years after the Plan's adoption in 2008.  For example, in August 2013, the City approved Sanimax's application of a Planned Unit Development ("PUD") that authorized a 50,000 square foot expansion of Sanimax's rendering facility, but placed odor-related conditions on the approval, including that Sanimax representatives "shall meet with City Staff on a quarterly basis to discuss odor levels" beginning in January 2014.  First Harris Decl. Ex. 24 [Docket No. 148] at 4.

**C.  City Enacts Odor Legislation**

In July 2014, the City adopted Ordinance No. 1279, which added new provisions aimed at the problem of odor emissions to the City Code. Id. Ex. 25 [Docket No. 148].  For example, City Code § 110-142 prohibits certain odor emissions, including "odors or smells which are offensive or obnoxious to another person within the City." Id. at 2.

Ordinance No. 1279 also established a framework for designating a property as a significant odor generator ("SOG") based on complaints about odors. Id. at 3.  If a property is designated as an SOG, City Code § 110-146 requires the property owner to work with the City Engineer to "develop an odor management plan using the best practicable odor control technology in order to mitigate the odor emissions on the property." Id.

**D.  City Designates Sanimax as Significant Odor Generator in 2015 and 2016, Sanimax Sues City in 2017**

In February 2015, the City designated Sanimax as an SOG.  Davis Decl. Ex. K [Docket No. 157].  Sanimax opposed the SOG designation. Id. Ex. L [Docket No. 157].  The City rescinded the SOG designation in May 2015 in exchange for Sanimax's agreement to meet with

the City at least quarterly to discuss and follow up on odor mitigation initiatives.  First Harris Decl. Ex. 26 [Docket No. 148].

In December 2016, the City again designated Sanimax as an SOG.  First Harris Decl. Ex. 27 [Docket No. 148].  In February 2017, Sanimax sued the City, claiming that its odor laws were unconstitutionally vague.  See Sanimax USA, LLC v. City of S. St. Paul, No. 17-cv-536, Docket No. 1 (Compl.) (D. Minn. Feb. 21, 2017).  The City rescinded the second SOG designation in April 2017, and in May 2017 Sanimax dismissed its lawsuit as moot.  First Harris Decl. Exs. 27-28 [Docket No. 148].

**E.  May 2017 Odor Amendments**

In May 2017, the City amended its odor laws to supplement the criteria required before the City could designate a property as an SOG.  Id. Ex. 29 [Docket No. 148].  The amendments added detail to the definition of "verified odor complaint" by specifying that the device to be used for detecting and measuring odor emissions was the Nasal Ranger field olfactometer, and that a measurement of 7 or more odor units would be deemed to be a verified odor complaint. Id.

**F.  City's 2019 Rezoning Ordinance**

In 2019, the City adopted Ordinance No. 1350 (the "Rezoning Ordinance"), which rezoned the 115-parcel BridgePoint area from Industrial use to Light Industrial use.  Id. Ex. 108 [Docket No. 152] (Rezoning Ordinance).  Prohibited uses include the processing of grease or organics into by-products and the rendering, reclaiming, or processing of animals or meat by-products.  Rezoning Ordinance at § 118-134(e)(15), (16).  Under the Rezoning Ordinance, existing non-conforming uses (including Sanimax's use) can be continued, repaired, replaced, and maintained, but cannot be expanded.  Id. Ex. 109 [Docket No. 152] (City Code § 118-64(a)).

The southern boundary of the new Light Industrial district is Interstate 494.  Id. Ex. 108 at CITY017524.  Properties immediately south of Interstate 494 that are within the 494 corridor were not rezoned and continue to be zoned for Industrial use.  Id.

**G.  City's 2020 Odor Amendment**

In 2020, the City adopted Ordinance No. 1356 (the "Odor Amendment") to amend the City's odor ordinances.  Id. Ex. 30 [Docket No. 148] (Odor Amendment).  The amendments included language clarifying that the City may use the administrative citation process to enforce violations of the City's odor ordinances.  Odor Amendment at § 110-150.  Even without the clarifying language, Sanimax was aware as early as August 2017 that it could be "fined $2000 per verified odor complaint."  Id. Ex. 104 at SANIMAX-0014685.

The City's internal emails show that the Odor Amendment was prompted at least in part by the City's concern that Sanimax would challenge the existing odor ordinance if the City were to declare Sanimax a SOG.  See Davis Decl. Ex. KK [Docket No. 159].  An internal email from the City Planner and Zoning Administrator stated in an email to SEH that the City intended to use the Odor Amendment to "punish a noncooperative business like Sanimax . . . to the maximum extent that our Code allows."  Id. Ex. XX [Docket No. 159].

**H.  City Sends Warning Letter, Cites Sanimax for Violations of Section 110-142**

On June 17, 2020, the City sent Sanimax a warning letter about the odors being emitted from Sanimax's rendering facility.  First Harris Decl. Ex. 33 [Docket No. 149].  The warning letter identified three verified odor complaints on three separate dates---May 19, 2020, May 21, 2020, and May 22, 2020---and provided the number of odor units measured by SEH using the Nasal Ranger on those dates (30, 7, and 15 units, respectively).  Id.  The letter also included the time of measurements and a description of the odor ("burnt, dead, rotting").  Id.  The warning

7

letter stated that violations of  City Code § 110-142 after July 4, 2020, would result in the imposition of administrative citations.  Id.

The City has since issued 20 administrative citations to Sanimax, totaling $35,000 for violations of City Code § 110-142.  Id. Ex. 36 [Docket No. 149].  For each of these violations, one or more complaints was received by the City, and SEH then determined that Sanimax was the source of an odor measured as 7 or more odor units using a Nasal Ranger.  Id.

## I.  Current Lawsuit

Sanimax has filed two lawsuits against the City, which have now been consolidated.  The first suit, filed on May 19, 2020, challenges the City's 2019 Rezoning Ordinance and asserts a First Amendment retaliation claim (Count I) and a class-of-one equal protection claim (Count II).[3]  The second suit, filed on September 4, 2020, asserts a void-for-vagueness claim (Count I) and a First Amendment retaliation claim (Count II).  The cases were consolidated in December 2020, and the Odor Case was administratively closed.  See Consolidation Order [Rezoning Case Docket No. 37]; [Odor Case Docket No. 21].

## III.  DISCUSSION

## A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary

---

[3] The Rezoning Case initially included five claims, but Counts III through V were dismissed by the Court on October 26, 2020, after partially granting the City's Motion to Dismiss.  See Order [Rezoning Docket No. 25].

judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in its favor.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation omitted).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate.  Id.  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

## B.  City's Summary Judgment Motion

### 1. Class-of-One Equal Protection Claim (Rezoning Case Count II)

Sanimax alleges that the Rezoning Amendment arbitrarily treats Sanimax as a "class of one" in violation of the Equal Protection Clause.  Compl. [Rezoning Case Docket No. 1] ¶¶ 51-59.

"The Equal Protection Clause requires that the government treat all similarly situated people alike."  Mensie v. City of Little Rock, 917 F.3d 685, 691 (8th Cir. 2019).  A class-of-one claim exists "when a plaintiff alleges that a defendant intentionally treated [it] differently from others who are similarly situated and that no rational basis existed for the difference in treatment."  Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011) (citing Vill. of Willowbrook v. Olech, 528 U.S. 562 (2000)).

The City argues that it is entitled to summary judgment on Sanimax's equal protection claim because Sanimax has not identified any businesses that are similarly situated to it in all relevant respects, and because the rezoning satisfies the rational basis standard.

### a. Similarly Situated

The "threshold inquiry" in a class-of-one equal protection claim is whether the plaintiff is "similarly situated to others who allegedly received preferential treatment." Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015). The class-of-one plaintiff must show that the persons alleged to have been treated more favorably are "identical or directly comparable to the plaintiff in all material respects." Id.

The similarly situated requirement is more difficult for a plaintiff to establish when the challenged government action involves "complex, multi-factored government decisionmaking processes." Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205 (11th Cir. 2007) (quotation omitted). A plaintiff challenging a multi-faceted government decision must show that the plaintiff is similarly situated to its alleged comparators "in light of all of the factors that would be relevant to an objectively reasonable governmental decisionmaker." Id. at 1207.

For example, in Griffin, the Eleventh Circuit applied the similarly situated requirement to a rendering plant's claim that defendants "singled [it] out" by subjecting the plant to rigorous odor regulations and attempting to prevent the plant from expanding, and that a "similarly situated" rendering plant had not been subjected to similar treatment. Id. at 1195, 1197-98, 1200. The Eleventh Circuit determined that "high levels of citizen complaints" about the plaintiff rendering plant's odors were "relevant in the comparison" of whether other entities were similarly situated. Id. at 1206.

Here, as in <u>Griffin</u>, the City's rezoning decision involves complex and multidimensional decisionmaking.  "In passing a zoning or rezoning ordinance, a city council is required to make a legislative judgment that a certain zoning classification will promote the 'public health, safety, morals and general welfare.'"  <u>State, by Rochester Ass'n of Neighborhoods v. City of Rochester</u>, 268 N.W.2d 885, 889 (Minn. 1978) (quoting Minn. Stat. § 462.357, subd. 1).  As such, Sanimax must show that it is similarly situated to its alleged comparators in light of all of the factors that an objectively reasonable government decisionmaker would have found relevant when making the rezoning decision.

Sanimax argues that Twin City Hide and Twin City Tanning are similarly situated in all relevant respects to Sanimax because all three businesses:  are located in an area of the City historically dominated by agricultural uses including animal waste rendering; were slated to be rezoned from Industrial to Light Industrial in the 2030 Comprehensive Plan; were identified in the 2030 Comprehensive Plan as visible properties located in the Interstate 494 corridor; are agricultural-industrial companies that recycle or salvage agricultural waste, including animal carcasses; sought and received City approvals for significant expansion projects after the 2030 Plan was adopted in 2008; were subject to a proposed 2017 zoning amendments that would have zoned them Light Industrial; and asked the City in 2017 to move the southern border of the proposed new Light Industrial district north of their respective properties so they could continue to be rezoned Industrial.

Despite these similarities, it cannot be reasonably disputed that Sanimax is not similar to Twin City Hide and Twin City Tanning when comparing the high levels of verified odor complaints.  The evidence adduced by the City shows that Sanimax generated more than ten times the number of verified odor complaints than the other two businesses from 2015 to 2021.

11

See First Harris Decl. Ex. 2 at HENNING008 (showing Sanimax generated 79 odor complaints whereas the comparator properties generated 7 or less).  Although Twin City Hide and Twin City Tanning also emit offensive odors, the complaint-based data shows that these entities are located one mile south of Sanimax on the other side of the ten-lane Interstate 494 bridge, where their odors do not disturb the general population to the same degree as Sanimax.  See First Harris Decl. Ex. 38 [Docket No. 149] (map).  Accordingly, Sanimax has not shown that it is similarly situated in all relevant respects to others who were treated more favorably.

Sanimax urges that odor complaints are not relevant to whether Sanimax is similarly situated to Twin City Hide and Twin City Tanning because Sanimax's class-of-one claim challenges only the Rezoning Ordinance, not the Odor Ordinances.  This argument ignores that the City's 2030 Plan for future land use expressly considers odor issues to be a material factor in future land use and redevelopment.  See Davis Decl. Ex. B at CITY000840 (stating that "foul odors . . . that are created from some of the industries associated with the former stockyards and meatpacking operations" had been "identified as development barriers," and would "need to be overcome to achieve the City's vision").  Odor complaints are a factor that an objectively reasonable government decisionmaker would have found relevant to the City's rezoning decision.  Because Sanimax generates a disproportionately high number of verified odor complaints in comparison to the other two businesses, no reasonable jury could conclude that Sanimax is similarly situated to those businesses in all relevant respects.

### b.  Rational Basis

Even if Sanimax could satisfy the similarly situated requirement, the equal protection claim still fails because a rational basis existed for the difference in treatment.  The rational basis standard is satisfied "if there is any reasonably conceivable state of facts that could provide a

rational basis for the classification."  Gallagher v. City of Clayton, 699 F.3d 1013, 1019 (8th Cir.

2012) (quoting F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)).

The record establishes that a rational basis existed for rezoning the area north of Interstate

494 as "Light Industrial" while keeping the area south of the interstate "Industrial."  Much

redevelopment had already occurred in the BridgePoint Business Park north of Interstate 494

where Sanimax was located.  Conversely, no such redevelopment had happened in the industrial

area south of Interstate 494.  Sanimax's own expert testified that there is nothing south of

Interstate 494 that is similar to BridgePoint Business Park.  Second Harris Decl. Ex. 111 [Docket

No. 168-1] at 104.

Sanimax argues that drawing the line at Interstate 494 is irrational because redevelopment

had not occurred in the area near Sanimax immediately north of Interstate 494.  Additionally, the

2030 Plan envisioned treating the visible properties immediately north and south of the interstate

similarly by rezoning the 494 corridor to be Light Industrial.  Sanimax thus contends that the

southern boundary for the Light Industrial district should have been drawn further north, at

Armour Avenue.

This argument lacks persuasion because "equal protection is not a license for courts to

judge the wisdom, fairness, or logic of legislative choices."  Beach Commc'ns, 508 U.S. at 313.

"These restraints on judicial review have added force where the legislature must necessarily

engage in a process of line-drawing."  Id. at 315 (quotation omitted).  "Defining the class of

persons subject to a regulatory requirement—much like classifying governmental beneficiaries—

inevitably requires that some persons who have an almost equally strong claim to favored

treatment be placed on different sides of the line, and the fact that the line might have been

drawn differently at some points is a matter for legislative, rather than judicial, consideration."

Id. at 315-16 (quotation and alteration omitted).  The City's decision to draw the Light Industrial line at Interstate 494, which serves as the southern boundary for the largely redeveloped BridgePoint Business Park, was rational.

An additional rational basis for the zoning decision is the disproportionately high number of verified odor complaints generated by Sanimax in comparison to other business.  "[L]arge numbers of odor complaints from local residents" are relevant in determining that local officials' actions are rational.  Griffin, 496 F.3d at 1207.  Given that Sanimax is located in a part of the City where its odors disturb residents at a substantially higher rate when compared with rendering plants located across the interstate, it would be rational for the City to want to prevent another rendering plant from starting up in the same area of the City as Sanimax.  The rezoning furthers this rational goal by making rendering plants a prohibited use.

Accordingly, the City is entitled to summary judgment on Sanimax's class-of-one equal protection claim.

### 2.  Retaliation Claims (Rezoning Case Count I, Odor Case Count II)

Sanimax claims that the City enacted the Rezoning Ordinance and the Odor Amendment in retaliation for Sanimax's constitutionally protected activity.  See Rezoning Compl. ¶¶ 41-50; Odor Compl. [Odor Case Docket No. 1] ¶¶ 65-73.  The parties agree that Sanimax's protected activity began in February 2015 and includes Sanimax's appeals of its SOG designations in 2015 and 2016, and Sanimax's 2017 filing of a lawsuit challenging the City's Odor Ordinances.  Stipulation [Docket No. 141].

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."  Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (quotations and alteration omitted).  To prevail on a First Amendment

retaliation claim, a plaintiff must show:  (1) the plaintiff engaged in a protected activity; (2) the government official took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated by the exercise of the protected activity.  Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014).

The parties dispute whether the third element has been satisfied.  This element requires that the retaliatory motive must have been the "but-for" cause of the adverse action, meaning that the action would not have occurred absent the official's retaliatory motive.  Laney v. City of St. Louis, 56 F.4th 1153, 1157 (8th Cir. 2023) (citing Nieves, 139 S. Ct. at 1722).  Under this rigorous causation standard, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury."  Nieves, 139 S. Ct. at 1722 (emphasis in original).  The rationale behind the but-for causation requirement is that an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."  Hartman v. Moore, 547 U.S. 250, 260 (2006).

Sanimax relies on the Eighth Circuit's decision in Peterson v. Kopp to argue that summary judgment must be denied because there is evidence from which a jury could conclude that the City's adverse action was caused "even in part" by Sanimax's protected activity.  Pl. Mem. Opp'n Summ. J. [Docket No. 165] at 17 (quoting Peterson, 754 F.3d at 602-603).  Sanimax's reliance on Peterson is misplaced, however, because the Eighth Circuit has recently clarified that "[t]o the extent Peterson suggests that a 'substantial factor' is enough [for First Amendment retaliation claims], even in the absence of but-for causation, it is inconsistent with Nieves and no longer good law."  Laney, 56 F.4th at 1157 n.2 (internal citation omitted).

The evidence here, when viewed in the light most favorable to Sanimax, it is not sufficient to satisfy the but-for causation standard because no reasonable jury could conclude that

the 2019 Rezoning Ordinance and the 2020 Odor Amendment would not have been adopted absent Sanimax's protected conduct.

With respect to the Rezoning Ordinance, Sanimax's property had been identified for future light industrial zoning since December 2008, when the City adopted the 2030 Comprehensive Plan.  As such, the City's zoning actions were set in motion years before Sanimax's protected conduct.  See Musco Propane, LLP v. Town of Wolcott, No. 10-CV-1400, 2011 WL 3267756, at *9 (D. Conn. July 28, 2011) (dismissing retaliation claim where actions taken by town authorities after plaintiff engaged in protected conduct "appear to be part of a continuing series of zoning decisions that began before" plaintiff's protected conduct occurred).  The Rezoning Ordinance furthers the 2030 Plan, which included removing or resolving odor issues by "working with the industries to try to mitigate the odors, or if mitigating the odors are not possible or feasible then working with the industries to determine if there are alternate locations for those uses."  Davis Decl. Ex. B at CITY000843.

Sanimax argues that the odor issues are a "red herring" or sham issue because odors have existed in the City for at least 60 years, and the City and Sanimax worked well together until Sanimax began engaging in protected activity.  Sanimax contends that "[t]he only thing that changed is that Sanimax began engaging in protected activity."  Pl. Mem. Opp'n Summ. J. at 20.

However, much had changed over those 60 years.  The stockyards had closed, the BridgePoint area had transitioned into primarily light-industrial uses, and the City had adopted the 2030 Plan, which included addressing and overcoming odor issues so the City could achieve its vision for the future.  Davis Decl. Ex. B at CITY0040-43.  In furtherance of the Plan, the City had taken steps to reduce odor pollution by enacting odor legislation in July 2014.  First Harris Decl. Ex. 25.

In addition to these general efforts by the City to resolve odor issues, the City also began taking action to specifically address Sanimax's odor problems. The City's actions began more than a year before Sanimax started engaging in protected activity. For example, in August 2013, the City approved Sanimax's PUD application for an expansion project but conditioned the approval on several odor-related requirements, including a requirement that Sanimax representatives "shall meet with City Staff on a quarterly basis to discuss odor levels" beginning in January 2014. First Harris Decl. Ex. 24 at 4. The City took further action in February 2015, when it designated Sanimax as an SOG in an attempt to resolve Sanimax's odor issues through an odor mitigation plan. Id. Ex. 26. Thus, the City's efforts to reduce odor pollution in general, and to resolve Sanimax's odor problems in particular, predate Sanimax's protected activity.

Not only did the City's efforts to address Sanimax's odors predate Sanimax's protected expression, the record is devoid of any evidence showing that Sanimax had given the City any reason to believe that Sanimax would resolve its odor issues on its own before the City adopted the Rezoning Ordinance and Odor Amendment. To the contrary, the last time Sanimax approached the City with a new odor-mitigation component was in January 2018, when Sanimax submitted an amended PUD application to add a new poultry scrubber. First Harris Decl. Exs. 91-92 [Docket No. 152]. Less than a month later, Sanimax dropped the proposal and never revived it. Id. Ex. 48 [Docket No. 150] at 7-8 (Responses to Requests for Admission 12-16), Exs. 93-94 [Docket No. 152]. Thus, the City Council understood that Sanimax recognized a need to improve its odor mitigation but then dropped its proposed improvement without explanation and did not substitute anything for its abandoned request.

From mid-2019 through the first five months of 2020, the City was receiving an increasing number of odor complaints, particularly in March and April of 2020 when residents

were working remotely from their homes in the City during the beginning of the pandemic.  Id. Ex. 1 [Docket No. 146], Ex. 31 [Docket No. 149] at 49-50; Davis Decl. Ex. KK [Docket No. 159] at CITY034306.

Without any basis for believing that Sanimax would resolve its odor problem, combined with the evidence of growing complaints and pressure from the public to do something about the odor issues, no reasonable jury could conclude that the City would not have passed the Rezoning Ordinance and Odor Amendment had Sanimax not engaged in protected conduct.

To avoid reaching this conclusion, Sanimax argues that the City made three "damning" statements that show a causal connection between the City's retaliatory motive and Sanimax's protected expression.  First, Sanimax alleges in its Rezoning Complaint and its brief that the City Attorney told a Sanimax attorney who is now deceased that the 2019 Rezoning Ordinance was intended to "sunset" Sanimax and put it out of business.  The only arguably admissible evidence on this issue is from the deposition of the City Attorney, who testified that he does not recall saying that the City wanted to sunset Sanimax.  Davis Decl. Ex. DD [Docket No. 159] at 107-110.  The City Attorney testified that if he did use the term during the conversation, he would have used it consistent with his understanding that under Minnesota law, non-conforming uses "may sunset only when the owner and operator of those uses makes the determination to cease those uses," and "until then the owner can deep doing exactly what they're doing."  Id. at 108-09.

Regarding the second allegedly damning statement, Sanimax's General Manager Donn Johnson ("Johnson") testified in his deposition that a real estate broker told him that the City gave him "very explicit guidance not to sell [a building on 205 Hardman Avenue] to Sanimax."  Id. Ex. W at 133.  However, Johnson's testimony about the out-of-court statement made by the

real estate broker is inadmissible hearsay under Federal Rule of Evidence 801(c).  Again, the

only arguably admissible evidence on this issue would be from the declarant, the real estate

broker, who avers that:  the City did not own the building; the broker was not the City's agent;

the City never gave the broker any guidance or instruction about whether the building should be

sold, leased, subleased, or used by Sanimax; and the broker never made the alleged statement.

Lelich Decl. [Docket No. 163]  ¶¶ 4, 6-9.

The third allegedly damning statement was purportedly made by City Planner Hellegers

to a local business member while the two were waiting for a 2019 zoning meeting to begin.

According to the deposition testimony of Sanimax's plant manager, who was standing nearby

and overheard the conversation, the business member told Hellegers he was concerned about the

potential impact of the proposed zoning changes.  Davis Decl. Ex. AA [Docket No. 159] at 150.

Hellegers responded, "[W]e're not out to get existing businesses."  Id.  The business member

then told Hellegers, "I wish you could use it to . . . get rid of those stinky neighbors next to me

here."  Id.  The plant manager testified that the business member was referring to Sanimax, and

that Hellegers replied by saying words to the effect of: "[I]f there's a legal means to do so, we

will."  Id. at 150-51.  Neither Helleger's statement that the City is "not out to get existing

businesses" nor his response to the business member's "stinky neighbor" complaint can be

reasonably be construed as evidence that the City passed the Rezoning Ordinance and Odor

Amendment to retaliate against Sanimax for engaging in protected conduct.

Sanimax also argues that an April 2, 2020 email from the City Planner and Zoning

Administrator shows that the reason the City added language in the Odor Amendment about

enforcing odor violations through the citations process was because the City was concerned that

Sanimax would challenge any effort by the City to designate Sanimax as a SOG.  Id. Ex. KK at

CITY034305.  However, adding clarity to an ordinance out of concern that the ordinance could be challenged is not retaliation for protected activity.

Because Sanimax has failed to adduce evidence that would permit a reasonable jury to find that the City's retaliatory motive was the but-for cause of its adverse action, summary judgment is granted to the City on Sanimax's First Amendment retaliation claims.

### 3.  Void for Vagueness Claim (Odor Case Count I)

Sanimax claims that the 2020 Odor Amendment and the underlying odor ordinances are unconstitutionally vague, both facially and as applied.  Odor Compl. ¶¶ 56-64; Pl. Mem. Opp'n Sum. J. [Docket No. 165] at 30.  The City argues that it is entitled to summary judgment on this claim because Sanimax received fair warning that its conduct violated the City's odor laws.

#### a.  As-Applied Challenge

A vagueness challenge to a city ordinance that does not involve First Amendment freedoms is an as-applied challenge.  Nygard v. City of Orono, 39 F.4th 514, 519 (8th Cir. 2022).  A plaintiff must first prevail on an as-applied challenge before raising a facial challenge because "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  United States v. KT Burgee, 988 F.3d 1054, 1060 (8th Cir. 2021) (quotations omitted), cert. denied sub nom. Burgee v. United States, 142 S. Ct. 473 (2021).

To withstand a vagueness challenge, a government policy must satisfy a two-prong test.  "The [policy] must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement."  United States v. Barraza, 576 F.3d 798, 806 (8th Cir. 2009).

### i. Adequate Notice

Sanimax claims that the Odor Amendment and underlying odor ordinances are vague because they create a potential violation whenever an odor is "offensive or obnoxious to another person within the city." City Code § 110-142. Sanimax argues that this language fails to give Sanimax or any other business adequate notice of which type or strength of odor will be subject to punishment.

This argument lacks merit because Sanimax received fair warning of how noncompliance with City Code § 110-142 is determined. See Nygard, 39 F.4th at 519 (holding that an "as-applied challenge fails if the person challenging the provision has received fair warning of the criminality of his own conduct") (internal quotation marks omitted). Specifically, on June 17, 2020, the City sent Sanimax a warning letter concerning odors being emitted from its facilities. First Harris Decl. Ex. 33. The warning letter explained that Sanimax must bring its property into compliance with City Code § 110-142 by "ceasing and desisting from emitting offensive odors, specifically, odors that are detectable at a level of 7 odor units or higher [using a Nasal Ranger olfactometer], as measured from a location not on the Sanimax Property." Id. The warning letter also explained that repeated violations of City Code § 110-142 after July 4, 2020, would result in the imposition of administrative citations. Id. This warning letter was sufficient to put Sanimax on notice that emitting odors measurable from beyond Sanimax's property line at 7 or more odor units by a Nasal Ranger would result in monetary fines. See Nygard, 39 F. 4th at 519-20 (affirming dismissal of vagueness challenge to city ordinance requiring that a permit be obtained, where plaintiff landowner had been informed by a city inspector that a permit was required, thereby providing the landowner with "fair warning of the criminality of his own

conduct").  Moreover, Sanimax understood as early as August 2017 that the City could fine it $2000 per verified odor complaint.  First Harris Decl. Ex. 104 at SANIMAX-0014685.

Sanimax also argues that on three occasions when Sanimax was cited for generating unlawfully strong odors, the City failed to confirm the odor that precipitated the complaint.  This argument mischaracterizes the evidence.  On each of those three occasions, after failing to detect an odor at the address indicated by the complainant, the City's odor consultant firm (SEH) proceeded to investigate five businesses, including Twin City Hide and Twin City Tanning, to see if the complained-of odor could be linked to any of those businesses.  Dodd Decl. Ex. RRR [Docket No. 166-19], Ex. SSS [Docket No. 166-20], Ex. TTT [Docket No. 166-21].  During each of those investigations, SEH verified an odor of 7 units or more from Sanimax but from no other businesses.  Id.

## ii.  No Arbitrary Enforcement

Sanimax also claims that the Odor Amendment and underlying Odor Legislation lend themselves to arbitrary enforcement because the ordinances do include the circumstances under which the City will pursue enforcement through the SOG process outlined in Section 110-144, versus when enforcement will be pursued through the administrative citation process.

Where a statute or ordinance plainly defines the potential range of consequences that may be imposed, the provision is not void for vagueness and does not violate due process prohibitions against arbitrary enforcement.  See United States v. Batchelder, 442 U.S. 114, 126 (1979) (holding that the notice requirements of the Due Process Clause were satisfied even though two statutes included different penalties for the same criminal conduct, because "[t]he [statutory] provisions at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose"); cf. Redlich v. City of St. Louis, 51 F.4th 283, 288 (8th Cir. 2022) (concluding that

City can pursue goal of preventing foodborne illnesses through criminal enforcement of an ordinance or by obtaining compliance with ordinance through health department's outreach to lawbreakers).

Here, the Odor Amendment plainly defines the potential range of consequences that the City may impose for violating City Code § 110-142.  As such, the City's discretion to select from among the means of enforcing the prohibition on odor pollution does not present a void-for-vagueness problem with regard to arbitrary enforcement.

Sanimax further argues that the City has arbitrarily enforced the odor ordinances by using the administrative citation process only against Sanimax.  This assertion is not correct.  The City has also invoked the citations process against Twin City Hide and Twin City Tanning by sending them a warning letter on October 11, 2021.  See Second Harris Decl. Ex. 113 [Docket No. 168-1].  Warning letters are part of the administrative citations process.  See First Harris Decl. Ex. 107 [Docket No. 152] at 2-3 (City Code § 38-105 authorizing the issuance of warning letters when pursuing enforcement through the administrative citations process).

Because Sanimax received fair warning that its conduct violated the Odor Ordinances, and the Odor Ordinances do not lead to arbitrary enforcement, Sanimax's as-applied challenge to the Odor Ordinances fails.

### b.  Facial Challenge

Because Sanimax cannot prevail on its as-applied challenge, its facial challenge to the Odor Amendment and underlying Odor Legislation also fails.  Accordingly, summary judgment is granted to the City on Sanimax's void-for-vagueness claim.

**C. Sanimax's Partial Summary Judgment Motion**

Sanimax moves for partial summary judgment as to six affirmative defenses raised by the City. Having concluded that the City is entitled to summary judgment, Sanimax's motion for partial summary judgment is denied.

## IV. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant City of South St. Paul's Motion for Summary Judgment [Docket No. 142] is **GRANTED**;

2.  Plaintiff Sanimax USA, LLC's Motion for Partial Summary Judgment [Docket No. 154] **DENIED**; and

3.  This consolidated lawsuit is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery
Dated: February 23, 2023                    ANN D. MONTGOMERY
                                            U.S. DISTRICT COURT